UNIVERSITY OF TEXAS and Ellen
Wartella, Appellants,

v.

Paula POINDEXTER, Appellee.

No. 03–04–00806–CV.

Court of Appeals of Texas,
Austin.

July 3, 2009.

James Beau Eccles, Asst. Atty. Gen., Austin, TX, for Appellant.

Gary L. Bledsoe, Law Office of Gary L. Bledsoe, Austin, TX, for Appellee.

Before Chief Justice JONES, Justices PATTERSON and PURYEAR.

## OPINION

J. WOODFIN JONES, Chief Justice.

Paula Poindexter, appellee, sued the University of Texas at Austin and Ellen Wartella (collectively, "the University") for, among other things, employment discrimination based on disparate treatment, retaliation, and disparate impact. *See* Tex. Lab.Code Ann. §§ 21.051, .055, .122 (West 2006). The University filed a plea to the jurisdiction asserting in relevant part that Poindexter's retaliation and disparate-impact claims were barred because Poindexter had not timely raised them in an administrative complaint. *See id.* § 21.202(a). The plea also asserted that chapter 106 of the Texas Civil Practice and Remedies Code, which Poindexter had invoked as a basis for the trial court's jurisdiction, does not give trial courts jurisdiction over employment discrimination claims. The trial court granted the University's plea in part, but denied it as to Poindexter's retaliation, disparate-impact, and chapter 106 claims, and the University appealed. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West 2008). We will reverse the portion of the trial court's order denying the plea as to retaliation, disparate impact, and chapter 106 jurisdiction and render judgment dismissing those claims.

## FACTUAL AND PROCEDURAL BACKGROUND

Beginning in 1992, Poindexter, an African–American woman, worked for the University as a tenured associate professor of journalism. In 2000, Poindexter applied for promotion to full professor. The Uni-

versity reviewed Poindexter's application and denied it on December 18, 2000. Poindexter protested this denial within the University, and on May 2, 2001, she filed a letter of complaint with the Equal Employment Opportunity Commission (EEOC). Poindexter's May 2 letter stated, in part:

I was recently denied a promotion to full professor because I am an African–American female and I wish to file a complaint with your office. In addition to denying my promotion, I have not received performance evaluations and merit increases commensurate with my performance. I have also been blocked from applying for and participating in professional and leadership opportunities. Finally, discriminatory tactics have been used to undermine my performance of professional responsibilities.

The EEOC responded to Poindexter's letter by requesting additional information, and on May 23, 2001, Poindexter sent the EEOC a follow-up letter.

On June 8, 2001, Poindexter perfected her complaint with the EEOC by submitting a verified charge form. *See* Labor Code § 21.201. The form prompted Poindexter to check boxes next to all bases of discrimination against her. Poindexter checked the box next to "Race" but did not check any of the boxes next to "Color," "Sex," "Retaliation," or "Other." The form also prompted Poindexter to fill in the earliest and latest dates of discrimination. Poindexter filled in "12/18/2000" for both and did not check the "Continuing Action" box to indicate that the discrimination against her was ongoing. Finally, in the field requesting a narrative of "Particulars," Poindexter wrote the following:

I have been denied a promotion. I have not received adequate pay increases. I have not been allowed to participate in professional and leadership opportunities. I believe I have been discriminated against because of my race, black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

The EEOC began investigating Poindexter's charge. As its internal Investigation Plan reveals, the EEOC believed that disparate treatment was Poindexter's only theory of discrimination.[1] The EEOC investigated Poindexter's complaint during the second half of 2001 and the first half of 2002, during which time both Poindexter and the University provided the EEOC with related information. On March 25, 2002, the EEOC issued Poindexter a Notice of Right to Sue the University. *See* Labor Code § 21.252.

After Poindexter received her Notice of Right to Sue, she visited the EEOC office to review her case file. Poindexter claims that while doing so she first realized that, contrary to her intention, her June 8, 2001 charge form had not listed retaliation as a basis of discrimination against her. Poindexter informed the EEOC of this omission, and after she completed an affidavit explaining the situation,[2] the EEOC allowed Poindexter to complete a second charge form.

Poindexter filed her second charge form with the EEOC on May 7, 2002. This form received a different charge num-

---

1. "Disparate-treatment discrimination addresses employment actions that treat an employee worse than others based on the employee's race, color, religion, sex, or national origin. In such disparate-treatment cases, proof and finding of discriminatory motive is required." *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir.2006) (citing *International Broth-*

*erhood of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)), *cert. denied*, 549 U.S. 888, 127 S.Ct. 299, 166 L.Ed.2d 154 (2006).

2. This affidavit is not in the record before this Court.

ber from the first, indicating that the EEOC treated it as a new and separate charge rather than as an amendment to the first charge.[3] Like the first, the second charge form prompted Poindexter to check boxes next to all bases of discrimination against her. This time Poindexter checked only the box next to "Retaliation." Poindexter once again recorded December 18, 2000 as both the first and last date of discrimination against her, though she also checked the box next to "Continuing Action." Finally, in the field requesting a narrative of "Particulars," Poindexter wrote the following:

> In or around 1996, I complained to the President of the University that I was being discriminated against because of my race. I was denied promotion to full professor on December 18, 2000. I was not given adequate pay increases, and was not allowed to participate in professional and leadership opportunities. I believe that these actions were taken against me in retaliation for complaining of racial discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended.

On June 3, 2002, at Poindexter's request, the EEOC issued Poindexter a Notice of Right to Sue on her second complaint. Concomitantly, on June 25, 2002, the Texas Commission on Human Rights (TCHR) issued Poindexter a Notice of Right to File a Civil Action for each of her EEOC charges.[4] Poindexter filed suit in August 2002 and amended her petition on October 25, 2004.

Poindexter's amended petition included causes of action for, among other things, disparate treatment on the basis of race, retaliation for her 1996 complaints about discrimination, and, unlike either of her EEOC charges, disparate impact of University policies on black employees. Poindexter asserted that the trial court had jurisdiction over these causes of action under both chapter 21 of the Texas Labor Code and chapter 106 of the Texas Civil Practice and Remedies Code.

In its plea to the jurisdiction, the University conceded that Poindexter had timely filed a disparate-treatment cause of action. It argued, however, that the only instance of disparate treatment properly before the court was Poindexter's December 18, 2000 promotion denial. The University also argued that Poindexter's retaliation and disparate-impact causes of action were time-barred because Poindexter had not filed them with the EEOC during the 180–day statutory time period. Finally, the University argued that, regardless of whether any causes of action were time-barred, Poindexter's invocation of chapter 106 of the Texas Civil Practice

---

3. Given the 180–day filing deadline for administrative charges, *see* Labor Code § 21.202, it is not clear why the EEOC allowed Poindexter to file an entirely new charge in May 2002 for discrimination that had a triggering date of December 18, 2000. In any event, as we discuss below, the record contains conclusive evidence that the May 2002 charge is time-barred. The EEOC's apparent acceptance of the charge does not compel a finding of timeliness. *See Guevara v. H.E. Butt Grocery Co.,* 82 S.W.3d 550, 553 (Tex.App.-San Antonio 2002, no pet.) (noting that agency action cannot create subject-matter jurisdiction).

4. At the times Poindexter filed her charges, the EEOC and the TCHR shared administrative responsibility for employment discrimination claims. *See Vielma v. Eureka Co.,* 218 F.3d 458, 462 (5th Cir.2000). Thus, filing a charge with the EEOC satisfied the filing requirements of Texas Labor Code chapter 21. *See Burgmann Seals Am., Inc. v. Cadenhead,* 135 S.W.3d 854, 857 (Tex.App.-Houston 2004, pet. denied). In 2003, the Texas Workforce Commission civil rights division replaced TCHR in the work-sharing relationship with the EEOC. *See* Labor Code § 21.0015.

and Remedies Code was ineffective, as that chapter does not apply to (and therefore does not give trial courts jurisdiction over) employment discrimination claims.

The court granted the University's plea as to claims of discrimination that occurred before December 18, 2000 but denied the plea in all other respects. The court did not issue findings of fact or conclusions of law in conjunction with its order. On appeal, the University contends that the court erred by denying the University's plea regarding retaliation, disparate impact, and chapter 106.[5]

## STANDARD OF REVIEW

Whether a court has subject matter jurisdiction is a question of law. *Texas Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex.2004).

A plea to the jurisdiction often may be determined solely from the pleadings and sometimes must be. *See Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554–55 (Tex.2000). Such a determination is reviewed de novo. *Miranda,* 133 S.W.3d at 226. When a plea to the jurisdiction challenges the existence of jurisdictional facts, however, a court should consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *Id.* Such cases fall into two categories: (1) those in which the jurisdictional issue or facts do not substantially implicate the merits of the plaintiff's case, but rather are, for the most part, separate and distinct from the merits; and (2) those in which the jurisdictional issue or facts implicate the merits of the plaintiff's case. Courts treat these two categories of cases in markedly different ways.

Where the jurisdictional issue or facts do *not* implicate the merits of the case, and the facts are disputed, the court—not the jury—must make the necessary fact findings to resolve the jurisdictional issue. *See id.* (" 'Whether a district court has subject matter jurisdiction is a question for the court, not a jury, to decide, even if the determination requires making factual findings, unless the jurisdictional issue is inextricably bound to the merits of the case.' ") (quoting *Cameron v. Children's Hosp. Med. Ctr.,* 131 F.3d 1167, 1170 (6th Cir.1997)). If, however, the facts relevant to jurisdiction are undisputed, the court should make the jurisdictional determination as a matter of law based solely on those undisputed facts. *Id.* at 228. Because a court should not proceed with a case over which it has no jurisdiction, it should make the jurisdictional determination as soon as practicable, but has discretion to defer the decision until the case has been more fully developed. *Id.* at 227.[6] On appeal, any fact findings made to resolve the jurisdictional issue may be challenged, as any other fact findings, for legal and factual sufficiency. This includes implied fact findings if written findings and

5. Poindexter argues that the chapter 106 issue is not ripe for appeal because the University's plea to the jurisdiction did not raise it. In fact, the University's plea did raise it; it incorporated by reference a chapter 106 argument from an earlier plea.

6. Here, the trial court's order denying the plea to the jurisdiction did not indicate that the court was deferring its jurisdictional determination until the case was more fully developed. Nor did Poindexter urge a deferral of the issue in her response to the University's plea to the jurisdiction. Accordingly, because the trial court did not purport to exercise its discretion in this regard, we will not attempt to apply an abuse-of-discretion standard in reviewing the trial court's denial of portions of the plea. In any event, as discussed below, the relevant facts before the trial court were undisputed and conclusive, so fuller development of the case would have been pointless.

conclusions are not issued. *Cf. BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789, 795 (Tex.2002).

The second category consists of cases in which the jurisdictional issue or facts *do* implicate the merits of the plaintiff's case. Courts have used a number of phrases to describe this category of cases, including that the jurisdictional inquiry is "inextricably linked to the merits," is "inextricably bound to the merits," or "implicates the merits." Whatever label is used, the essential constituent is that many if not most of the challenged jurisdictional facts will also determine whether the plaintiff is entitled to relief on the merits of her case. But "the proper function of a dilatory plea [such as a plea to the jurisdiction] does not authorize an inquiry so far into the substance of the claims presented that plaintiffs are required to put on [the merits of] their case simply to establish jurisdiction." *Bland,* 34 S.W.3d at 555. Accordingly, where a jurisdictional issue and accompanying evidence implicate the merits of the plaintiff's case, the trial court does not act as a fact finder. Rather, the defendant is put to a burden very similar to that of a movant for summary judgment:

> If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder [at trial]. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law.

*Miranda,* 133 S.W.3d at 227–28. As with a summary judgment, the trial court's determination in such a case is a purely legal one and is, on appeal, reviewed de novo, with the appellate court indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Id.* at 228.

To bring a suit for unlawful employment practices, a plaintiff must first have filed an administrative complaint with the EEOC or the TCHR "not later than the 180th day after the date the alleged unlawful employment practice occurred." *See* Labor Code § 21.202(a). The 180-day period begins to run "when the employee is informed of the allegedly discriminatory employment decision." *Specialty Retailers, Inc. v. DeMoranville,* 933 S.W.2d 490, 493 (Tex.1996) (citing *Delaware State Coll. v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980)).[7] When filing suit, a plaintiff "may raise only the specific issue made in the employee's administrative complaint and 'any kind of discrimination like or related to the charge's allegations.'" *Elgaghil v. Tarrant County Junior Coll.,* 45 S.W.3d 133, 141 (Tex.App.-Fort Worth 2000, pet. denied) (quoting *Fine v. GAF Chem. Corp.,* 995 F.2d 576, 578 (5th Cir.1993)). Timely filing of an administrative complaint is a mandatory and jurisdictional prerequisite to filing suit. *Specialty Retailers,* 933 S.W.2d at 492; *Texas Parks & Wildlife Dep't v. Dearing,* 150 S.W.3d 452, 459 (Tex.App.-Austin 2004, pet. denied).

### DISCUSSION

The jurisdictional evidence here does not implicate the merits of the plaintiff's case: the jurisdictional issue concerns the timing and content of Poindexter's communications with the EEOC, whereas the merits concern whether the

---

7. Because chapter 21 of the Texas Labor Code effectuates federal anti-discrimination legislation, *see* Labor Code § 21.001, Texas courts may look to federal precedent when interpreting it. *See Quantum Chem. Corp. v. Toennies,* 47 S.W.3d 473, 475–76 (Tex.2001).

University discriminated against Poindexter. Thus, the trial court was required to resolve the jurisdictional issue on the basis of facts that it found or that were undisputed. *See Miranda,* 133 S.W.3d at 226 (citing *Cameron,* 131 F.3d at 1170). As plaintiff, Poindexter bore the burden of establishing those facts. *See Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993). The relevant jurisdictional facts were undisputed; accordingly, we review the trial court's decision de novo. *Miranda,* 133 S.W.3d at 227–28.

### *Poindexter's Retaliation Claim*

In her May 7, 2002 EEOC charge form, Poindexter alleged that the University retaliated against her in three ways: by denying her a promotion on December 18, 2000; by denying her pay increases; and by not allowing her to participate in professional and leadership opportunities.[8] The May 7 form does not specify the dates on which the latter two types of retaliation allegedly occurred; in fact, as already mentioned, the form states both that discrimination occurred only on December 18, 2000 and that discrimination was "continuing." As discussed below, however, the law compels us to conclude that December 18, 2000 was the latest effective date on which Poindexter was alleging that the University retaliated against her.

■ A charge filed with the EEOC must specify the date(s) on which the allegedly unlawful employment practice(s) occurred. *See* Labor Code § 21.201(c)(2). Among other things, this allows the EEOC to calculate whether the charge's 180–day filing deadline has passed. An exception to

the 180–day filing deadline, reflected in the "Continuing Action" box on the EEOC charge form, is for unlawful discrimination that "manifests itself over time, rather than [as] a series of discrete acts." *Wal–Mart Stores, Inc. v. Davis,* 979 S.W.2d 30, 41–42 (Tex.App.-Austin 1998, pet. denied). When such "continuing violation" discrimination occurs, the 180–day filing clock does not begin to run until one of the involved discriminatory events "should, in fairness and logic, have alerted the average layperson to act to protect his or her rights." *Id.* at 42.

■ The University's December 18, 2000 promotion decision was an event that should have alerted Poindexter to act to protect her rights—as indeed it did. Thus, even if that promotion decision was part of a "continuing violation," December 18, 2000 was the latest date on which Poindexter's 180–day clock could have started to run. If, on the other hand, Poindexter did not intend her May 7, 2002 charge form to allege a continuing violation, but rather intended it to allege a series of discrete events, then she was statutorily required to specify the date (and meet the separate 180–day filing deadline) of each discrete event. *See* Labor Code § 21.201(c)(2); *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (each "discrete discriminatory act starts a new clock for filing charges alleging that act"). Her failure to do so deprives the trial court of jurisdiction over any events for which she did not specify dates. *See Specialty Retailers,* 933 S.W.2d at 492; *Dearing,* 150 S.W.3d at 459. Thus, whether Poindexter intended to allege a continu-

---

8. Labor Code § 21.055 defines "retaliation" this way: "An employer ... commits an unlawful employment practice if the employer ... retaliates or discriminates against a person who, under this chapter: (1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing."

ing violation or a series of discrete events, December 18, 2000 is the latest date on which the operative 180–day filing clock could have started to run. As a result, Poindexter's May 7, 2002 retaliation charge, filed almost a year and a half after December 18, 2000, was untimely.

 Poindexter argues, however, that the "relation back" doctrine saves her retaliation charge. Under the "relation back" doctrine, an "amendment to a complaint alleging additional facts that constitute unlawful employment practices relating to or arising from the subject matter of the original complaint relates back to the date the complaint was first received by the commission." Labor Code § 21.201(f). The key to this doctrine is that the "amendment"—an edifying choice of words—must relate to or arise from the subject matter of the original complaint. Poindexter's retaliation allegation does not relate to or arise from the subject matter of her earlier disparate-treatment complaint.

 "Generally, amendments that raise a new legal theory do not 'relate back' to an original charge of discrimination." *Manning v. Chevron Chem. Co.,*

332 F.3d 874, 878 (5th Cir.2003).[9] Retaliation is a different legal theory from race-based discrimination. *Davis v. Educ. Serv. Cent.,* 62 S.W.3d 890, 894 (Tex.App.-Texarkana 2001, no pet.) ("Retaliation is an independent violation of the TCHRA...."); *Simms v. Oklahoma,* 165 F.3d 1321, 1327 (10th Cir.1999) (amended charge alleging retaliation did not relate back to original charge alleging only race discrimination). Thus, Poindexter's May 7, 2002 retaliation charge does not relate back to her June 8, 2001 charge, which by its own terms alleged only racial discrimination.

 Poindexter argues that even if her May 7, 2002 retaliation charge does not relate back to her June 8, 2001 disparate-treatment charge, it relates back to her May 2 and May 23, 2001 letters to the EEOC. These letters, she argues, allege retaliation. We disagree for two reasons.

First, the May letters simply do not allege retaliation; neither letter uses the word "retaliation" or any synonym thereof, neither letter discusses retaliation in form or substance, and neither letter even mentions the 1996 events for which the University allegedly retaliated.[10] Rather, the

9. An exception to this rule occurs when an employer retaliates against an employee for the very act of filing an employment discrimination claim. *Manning v. Chevron Chem. Co.,* 332 F.3d 874, 879 (5th Cir.2003). In such instances, the employee may file a claim for retaliation that relates back to the filing date of the claim that provoked the retaliation. That is not what Poindexter alleges here.

10. An attachment to Poindexter's May 23 letter, however, may mention these events. That attachment, a March 23, 2001 letter that Poindexter sent to the University provost to protest her promotion denial, states:

In 1996, I wrote a letter to former University of Texas President Bob Berdahl expressing my concern about misrepresentations and irregularities in the Journalism Depart-

ment Chair selection process, but Dr. Berdahl failed to do anything about it. Because Dr. Berdahl failed to act then, many of the same types of problems have resurfaced during the present promotion process.

It is not clear that the letter Poindexter references in this passage is the one that allegedly provoked retaliation; after all, this passage speaks of a letter that discussed "misrepresentations and irregularities," whereas Poindexter's May 7, 2002 EEOC charge form speaks of a letter that discussed racial discrimination. Nevertheless, even if this passage is referring to the 1996 letter that allegedly provoked retaliation, it still does not support Poindexter's contention that she alerted the EEOC to retaliation in May 2001. The passage above says nothing about retaliation; in fact, if anything, it indicates that Po-

May 2, 2001 letter states: "I was recently denied a promotion to full professor *because I am an African–American female.*" (Emphasis added.) Likewise, the May 23, 2001 letter states: "I was denied a promotion to full professor of journalism at The University of Texas at Austin *because I am an African–American female.*" (Emphasis added.) These statements plainly allege racial discrimination, not retaliation; thus, they do not support a later, untimely charge of retaliation. *See Bexar County v. Gant,* 70 S.W.3d 289, 292 (Tex. App.-San Antonio 2002, pet. denied) ("A lawsuit is limited to claims made in the discrimination complaint and 'factually related claims that could reasonably be expected to grow out of the Commission's investigation of the charges.' ") (quoting *Thomas v. Clayton Williams Energy, Inc.,* 2 S.W.3d 734, 738 (Tex.App.-Houston [14th Dist.] 1999, no pet.)).

▉ The contents of Poindexter's May 2001 letters are undisputed. Accordingly, whether those letters were adequate to allege retaliation, or could reasonably be expected to give rise to an investigation of retaliation, are questions of law. *See State ex rel. Dep't of Crim. Justice v. Vitapro Foods,* 8 S.W.3d 316, 323 (Tex.1999) ("[W]hen the facts are undisputed, whether something is an agricultural commodity [under the relevant statute] is a question of law."); *Odessa Tex. Sheriff's Posse, Inc. v. Ector County,* 215 S.W.3d 458, 472 (Tex. App.-Eastland 2006, pet. denied) ("Because the notices' content is undisputed, their adequacy is a question of law."); *Rettberg v. Texas Dep't of Health,* 873 S.W.2d 408, 413 (Tex.App.-Austin 1994, no writ) ("Since the facts are undisputed as to the content of the notice, a determination of its adequacy is a question of law."); *see also Cottrill v. MFA, Inc.,* 443 F.3d 629, 634 (8th Cir.2006) ("We review de novo the

proper reach of a Title VII claim."); *Conner v. Illinois Dep't of Natural Res.,* 413 F.3d 675, 680 (7th Cir.2005) ("Whether the issue of Conner's 2002 non-promotion was within the scope of her EEOC charge is a question of law, which we review *de novo.*").

▉ Poindexter's expert, Bill Hale, nevertheless avers that "the contents of [the May] letters are sufficiently specific to allege employment discrimination on the basis of race and retaliation." He also asserts that a "retaliation charge could reasonably be expected to grow out of" Poindexter's May correspondence. These assertions are, however, legal conclusions that do not constitute probative evidence. *See McIntyre v. Ramirez,* 109 S.W.3d 741, 749 (Tex.2003) ("A conclusory statement of an expert witness is insufficient to create a question of fact. . . ."). In any event, the record simply contains no evidence that supports Hale's assertions. As already discussed, Poindexter's correspondence nowhere mentions or suggests retaliation. Even the EEOC itself determined that Poindexter's complaint should trigger only a disparate-treatment investigation. We conclude as a matter of law that Poindexter's May 2001 letters did not allege retaliation and could not reasonably be expected to give rise to an investigation of retaliation. *See Pacheco,* 448 F.3d at 787 (affirming summary judgment because court determined as matter of law that EEOC charge did not sufficiently allege, and could not reasonably be expected to give rise to investigation of, particular discrimination claim); *Elgaghil v. Tarrant County Junior Coll.,* 45 S.W.3d 133, 144 (Tex.App.-Fort Worth 2000, pet. denied) (same).

▉ Second, while Poindexter's May 2001 letters may have initiated Poindex-

indexter's 1996 letter produced no action by the University president.

ter's first charge with the EEOC, the verified form that Poindexter filed on June 8, 2001 perfected that charge. *See* Labor Code § 21.201. Poindexter cites no authority, nor are we aware of any, indicating that a later, separate charge relates back to an earlier, perfected charge in its pre-perfected form. This is not what the relation-back statute comprehends. See Labor Code § 21.201(f) (amendment relates back to filing date of earlier version of same complaint).

Finally, Poindexter argues that she intended her first charge to include a retaliation claim, so the EEOC is to blame for its failure to include one and equity precludes her from suffering the consequences. This argument might succeed if the record showed that Poindexter actually communicated a retaliation theory to the EEOC in May or June of 2001, but, as already discussed, it does not. The record does show, on the other hand, that Poindexter verified her June 8, 2001 charge. Poindexter therefore knew (and should have protested, if appropriate) the charge's contents long before she reviewed her EEOC file in mid–2002.

In sum, the undisputed evidence shows as a matter of law that Poindexter did not timely file a retaliation charge with the EEOC. Thus, the trial court lacked jurisdiction over Poindexter's retaliation claim.

### Poindexter's Disparate–Impact Claim

■ Poindexter concedes that neither her June 8, 2001 nor her May 7, 2002 EEOC charge alleges disparate impact.[11] Instead, she contends that her letters of May 2, May 23, and October 5, 2001 show that she intended to allege disparate impact. We disagree.

■ Poindexter bases her argument on the facts that (1) her letters appear to invoke statistical data, and (2) the EEOC sought statistical data as part of its investigation. While it is true that disparate-impact analyses almost always turn on statistical data, it does not follow that all analyses incorporating statistical data necessarily concern disparate impact. In many instances, statistical data support disparate-treatment analyses. *See Smith v. City of Jackson,* 351 F.3d 183, 193 n. 12 (5th Cir.2003) (noting that "statistical evidence is quite useful in disparate treatment cases"), *aff'd,* 544 U.S. 228, 125 S.Ct. 1536, 161 L.Ed.2d 410 (2005). In fact, that is what occurred here: the EEOC's internal Investigation Plan demonstrates that the EEOC requested statistical data from the University to investigate Poindexter's disparate-treatment claim.

■ Perhaps partly because naked statistical data are ambiguous, a would-be disparate-impact plaintiff must also allege that her employer uses "(1) a facially neutral policy; (2) that, in fact, has a disproportionately adverse effect on a protected class." *Pacheco,* 448 F.3d at 791 (citing *Hebert v. Monsanto,* 682 F.2d 1111, 1116 (5th Cir.1982)). Failure to allege these elements in an administrative charge bars a plaintiff from bringing a disparate-impact claim in a court of law. *See id.* at 791–92.

*Pacheco* is highly instructive. The plaintiff in that case appealed a summary judgment dismissing his disparate-impact claim for failure to exhaust administrative remedies. In reviewing the scope of the charge that Pacheco had filed with the

---

11. A disparate-impact claim "addresses employment practices or policies that are facially neutral in their treatment of ... protected groups, but, in fact, have a disproportionately adverse effect on such a protected group. In disparate-impact cases, proof or finding of discriminatory motive is not required." *Pacheco,* 448 F.3d at 787 (citing *Hebert v. Monsanto,* 682 F.2d 1111, 1116 (5th Cir.1982)).

EEOC, the Fifth Circuit held that the charge was too narrow to exhaust a claim of disparate impact. *Id.* at 792. First, the court noted the proper scope of review of administrative charges: "the plaintiff's administrative charge will be read somewhat broadly, in a fact-specific inquiry into what EEOC investigations it can reasonably be expected to trigger." *Id.* After detailed factual analysis of Pacheco's administrative charge, the court summarized its reasons for holding, as a matter of law, that the charge was too narrow to support a disparate-impact claim: "a disparate-impact investigation could not reasonably have been expected to grow out of Pacheco's administrative charge because of the following matters taken together: (1) it facially alleged disparate treatment; (2) it identified no neutral employment policy; and (3) it complained of past incidents of disparate treatment only." *Id.* at 792. The court affirmed the summary judgment.

▉ In the present case, both of Poindexter's administrative charges are subject to the same critique. Poindexter's June 8, 2001 charge facially alleges only disparate treatment, identifies no neutral employment policy, and complains only of past incidents of disparate treatment. Similarly, even if it were not time-barred, Poindexter's May 7, 2002 charge facially alleges only retaliation, identifies no neutral employment policy, and complains only of past incidents of retaliation (and possibly disparate treatment). Thus, Poindexter did not exhaust her administrative remedies vis-à-vis her disparate-impact claim, depriving the trial court of jurisdiction over that claim.

▉ Nor do Poindexter's May and October 2001 letters to the EEOC save her disparate-impact claim. The October correspondence, filed almost four months after Poindexter's perfected charge, is irrelevant to determining whether Poindexter's charge alleged disparate impact. *See id.* (scope of charge turns on contents of charge itself). Furthermore, both the May and October correspondence recite statistics (*e.g.*, promotion rates for black professors, the percentage of University professors who are black) equally consistent with disparate-treatment and disparate-impact analyses. If Poindexter intended the statistics to serve as a basis for the latter, she needed to identify a facially neutral University policy that disproportionately harmed black employees. *See id.* at 791. She did not.

Accordingly, we hold that, as a matter of law, Poindexter's communication with the EEOC did not satisfy the legal requirements for exhausting a disparate-impact charge. The trial court therefore lacked subject-matter jurisdiction over Poindexter's disparate-impact claim.

### Employment Discrimination Claims Under Chapter 106

▉ This Court has previously held that chapter 106 of the Texas Civil Practice and Remedies Code does not comprehend employment discrimination claims. *See Wright v. Texas Comm'n on Human Rights,* No. 03–03–00710–CV, 2005 WL 1787428, 2005 Tex.App. LEXIS 5904 (Tex. App.-Austin July 27, 2005, pet. dism'd) (mem. op.). In so holding, we first examined the legislative history of chapter 106. *Id.* at *2, 2005 Tex.App. LEXIS 5904, at *7–8. We noted that when the legislature enacted the Texas Commission on Human Rights Act (TCHRA) in 1983,[12] it simultaneously repealed the employment discrimination language in Chapter 106's predecessor and moved that language into TCHRA. *See id.* at *2, 2005 Tex.App. LEXIS 5904,

---

12. The relevant portions of TCHRA later became chapter 21 of the Texas Labor Code. *See*

*Little v. Texas Dep't of Criminal Justice,* 148 S.W.3d 374, 377 (Tex.2004).

at *7 (citing, inter alia, Act of June 25, 1983, 68th Leg., 1st C.S., ch. 7, §§ 5.01 (including language in TCHRA that prohibits discriminatory employment practices), 10.02 (repealing sections from chapter 106's predecessor containing nearly identical language regarding discriminatory hiring and firing of employees), 1983 Tex. Gen. Laws 37, 45, 56–57). What remains of chapter 106 does not concern employment. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 106.001–.004 (West 2008).

We then examined the plain meaning of chapter 106 and concluded that it did not comprehend employment discrimination. *Wright*, 2005 WL 1787428, at *2, 2005 Tex. App. LEXIS 5904, at *7–8. Poindexter argues that, to the contrary, 106.001(a)(5)'s prohibition on withholding a "benefit" includes employment benefits, but the Fifth Circuit has rejected this argument as leading to incongruous results. *See Duke v. University of Texas at El Paso*, 663 F.2d 522, 525–26 (5th Cir.1981) (holding that interpreting chapter 106's predecessor to cover employment benefits would violate legislature's intent and render superfluous other statutory provisions).

Finally, we noted that we must strictly construe penal statutes like chapter 106. *Wright*, 2005 WL 1787428, at *2, 2005 Tex. App. LEXIS 5904, at *8 (citing *Duke*, 663 F.2d at 526–27; Tex. Civ. Prac. & Rem. Code Ann. § 106.003 (violation of section 106.001 is misdemeanor punishable by fine, confinement, or both)).

Our reasoning in *Wright* was sound; accordingly, we here "follow the longstanding and proper reading of [chapter 106], which excludes a cause of action for employment-related discrimination." *Id.* We hold that the trial court lacked jurisdiction to hear employment discrimination claims under that chapter.

## CONCLUSION

The undisputed evidence in this case relevant to jurisdiction conclusively shows that the trial court lacked jurisdiction over Poindexter's retaliation, disparate-impact, and chapter 106 claims. We therefore reverse the portion of the trial court's order denying the University's plea to the jurisdiction as to retaliation, disparate impact, and chapter 106, and we render judgment dismissing these claims for lack of jurisdiction.

Concurring and Dissenting Opinion by Justice PATTERSON.

JAN P. PATTERSON, Justice, concurring and dissenting.

I agree with the majority that the trial court lacked jurisdiction to consider Poindexter's employment discrimination claims based on chapter 106 of the civil practice and remedies code. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 106.001–.004 (West 2005); *Wright v. Texas Comm'n on Human Rights*, No. 03–03–00710–CV, 2005 WL 1787428, 2005 Tex.App. LEXIS 5904 (Tex.App.-Austin July 27, 2005, pet. dism'd) (mem. op.). Because the majority fails to recognize or address the breadth of Poindexter's evidence filed in response to the University's plea to the jurisdiction, disregarding our standard of review and the trial court's fact-finding function, I respectfully dissent to the remaining portions of the opinion reversing the trial court's order as to Poindexter's retaliation and disparate-impact claims.

In light of the standard of review and the Supreme Court's clarifying decision this week in *Ricci v. DeStefano*, 557 U.S. ——, 129 S.Ct. 2658, 174 L.Ed.2d 490 (2009), at a minimum, Poindexter—the appellee in this interlocutory, accelerated appeal that has been pending in this Court for over four years—should be given the opportunity to amend her pleadings to

cure the jurisdictional defects found by this Court. *See County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex.2002).

In reaching its holding that the trial court lacked jurisdiction because Poindexter did not comply with the 180–day statutory period for filing her retaliation and disparate-impact claims, *see* Tex. Lab. Code Ann. §§ 21.201, .202 (West 2006); *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex.1996) (compliance with 180–day statutory period jurisdictional prerequisite to bringing suit), the majority—without recognizing or addressing Poindexter's affidavit with attached documents—concludes that the relevant jurisdictional evidence concerning the timing and content of Poindexter's communications with the EEOC is undisputed and conclusive. After deeming the evidence undisputed, the majority then concludes that the "undisputed evidence shows as a matter of law that Poindexter did not timely file a retaliation charge with the EEOC" and that her "communications with the EEOC did not satisfy the legal requirements for exhausting a disparate-impact charge."

Based on our standard of review of a plea to the jurisdiction as delineated by the Texas Supreme Court that we "take as true all evidence favorable to the nonmovant" and "indulge every reasonable inference and resolve any doubts in the nonmovant's favor," I would conclude that Poindexter's evidence filed in response to the plea supports the trial court's jurisdiction to consider her retaliation and disparate-impact claims. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex.2004).

### Evidence in Response to Plea to the Jurisdiction

The evidence Poindexter filed in response to the plea to the jurisdiction included an affidavit from Poindexter with attachments and an affidavit from an expert on employment discrimination, Bill Hale, a former executive director of the Texas Commission on Human Rights and other human rights commissions, with attachments. Poindexter averred in relevant part:

4. I telephoned the EEOC office in San Antonio and from that conversation I understood that I could initiate the complaint by filing a brief letter to be followed by a more detailed letter. That telephone call was the first of more than a dozen contacts, which included telephone calls, written correspondence, and a personal visit that I had with the EEOC over a 12–month period.

5. I filed my complaint by letter dated May 2, 2001. This letter set my discrimination complaint in motion. In this letter, I referenced retaliatory actions such as being "blocked from applying for and participating in professional and leadership opportunities," not receiving performance evaluations, and not receiving merit increases commensurate with my performance. (May 2, 2001 Letter to EEOC). This is my original charge that I sent to the EEOC.

6. I amended my complaint by letter dated May 23, 2001 . . . . (May 23, 2001 Letter to EEOC). This is the amended charge that I sent to the EEOC.

7. [In my letter dated May 23, 2001], I have a more comprehensive disparate treatment example, plus a reference to disparate impact, "Since 1992, six males (five white and one Brazilian) have become full professors in the Department of Journalism. Four were promoted

from associate to full professor, including one who was promoted the year before my promotion was denied. During that same time period, no women and no African–Americans have been promoted to the full professor rank. Statistics from the Office of Institutional Studies would indicate that this pattern can be found throughout the University of Texas at Austin. After sending this letter, the EEOC conducted a disparate impact analysis. By letter dated February 6, 2002, Defendants indicate that they are responding to a January 25, 2002 request from the EEOC in which the EEOC asked for a list showing all associate professors within the University of Texas at Austin who have sought promotion to professor between the dates April 1, 1999 and January 25, 2002. Defendants were asked to specify the name, race, date of hire, department, college, date(s) the individual applied for promotion to professor, and final decision concerning each promotion application. . . .

8. Retaliation is also referenced on page 3 of my May 23, 2001 letter to the EEOC when I said: "I would like to report that the discriminatory practices toward me have stopped but that is *not* the case." I informed the EEOC that I had been excluded from a Budget Council meeting even though I was an elected member of the Budget Council. I also reference the fact that I had not been allowed to apply for the director of the department.

\*　　\*　　\*

10. The August 16, 2001 letter from the EEOC prompted me to send additional information to the EEOC on October 5, 2001. In my letter, I gave evidence of disparate treatment within the Journalism Department and College of Communication and disparate impact across the University. I referenced a University of Texas System Report that explicitly discussed disparate treatment of minorities, including African–Americans, in the promotion process. Furthermore, I provided a very detailed description of more than 10 retaliatory actions taken against me. . . .

11. After I received a Notice of a Right to Sue, which closed my case, I visited Marie Minks, the Federal Investigator in San Antonio, where I was permitted to review the complete EEOC File # 360A11118 to identify documents that I wanted to have copied. The EEOC had in its possession documents from more than 100 promotion dossiers representing every UT department and college for a three-year period that had considered the promotion of an associate professor. I also was able to review the correspondence between UT and the EEOC, including the questions the EEOC asked UT in order to conduct their analysis, (January 25, 2002 Letter from Marie Minks to Linda Millstone), statements from UT's EEOC officer Linda Millstone (August 2, 2001 Letter from Linda Millstone to Marie Minks), the president, the provost, the dean of the College of Communication, the dean of the graduate school, the vice president of research, and the chairs of journalism and advertising. . . .

12. After completing my review of the documents at the EEOC, I informed the EEOC investigator Marie Minks that the official charge form that had originally been written up by EEOC had not included retaliation, but should have, given that I'd raised these issues in my letters of May 2, 2001 and May 23, 2001. Ms. Minks responded by having me complete and sign an affidavit to the effect that my charge of retaliation had been overlooked by the EEOC, which I concluded would address their oversight in the original discrimination charge. This occurred on May 7, 2002. The EEOC then issued a Charge and Notice of a Right to Sue Notice for Retaliation. I followed the instructions from the EEOC officer, as I understood them, and filed the Notices of the Right to Sue documents with the Texas Commission on Human Rights. The Texas Commission on Human Rights issued a Notice of Right to File a Civil Action for EEOC Complaint # 360A11118 (Discrimination based on race) and EEOC Complaint # 360A201036 (Retaliation) on June 25, 2002.

Attached to Poindexter's affidavit were the following documents: (i) a letter dated March 23, 2001, from Poindexter to the University, concerning her disagreement with the decision denying her promotion and referencing "misrepresentations" and "irregularities in the promotion process" and her letter in 1996 to the president of the University expressing similar concerns; (ii) a letter dated April 3, 2001, from the University, responding to Poindexter's letter and attaching a copy of the section of the University's *Handbook of Operating Procedures* concerning promotion guidelines; (iii) a letter dated May 2, 2001, from Poindexter to the EEOC, (iv) a letter dated May 23, 2001, from Poindexter to the EEOC, referencing and enclosing the promotion guidelines from the handbook of operating procedures, the "letter of complaint" that she sent to the University, and other documents, and stating that the "enclosed letter that I sent to the [University] documents my complaint," and (v) a letter dated October 5, 2001, from Poindexter to the EEOC, with attached additional documents.

Poindexter included documents with her letter dated May 23, 2001, and attached a "List of Enclosed Documents":

1. EEOC Information Sheet

2. Names and contact information for people involved in the promotion process

3. Executive summary prepared for dossier

4. Curriculum Vita

5. A review of [Poindexter's] co-authored book . . .

6. Letter of complaint to provost which was copied to the president

7. Document that records vote on [ ] promotion . . .

8. Dean's letter

9. Chair's letter

10. Budget Council's letter and summaries . . .

11. Letter from Department of Advertising chair . . .

12. Letters from external reviewers

13. Letter from chair of Faculty Grievance Committee to University's EEOC officer

14. Provost's response to [ ] letter of complaint

15. Promotion guidelines from Handbook of Operating Procedures.[1]

Poindexter similarly enclosed documents with her letter dated October 5, 2001, and included a list of those documents:

Attachment # 1: May 3, 1999 Memorandum from President Larry Faulkner on University of Texas at Austin Promotion Standards

Attachment # 2: May 18, 1992 Offer Letter

Attachment # 3: Office of Institutional Studies Chart on Faculty Characteristics

Attachment # 4: Letters, Memos, and Historical Background on the African–Americans and the Media Lecture Series . . .

Attachment # 5: Memos, Letters, Notes and Other Documents from the 1995 Journalism Department Chair Search

Attachment # 6: Memo and Press Release Announcing the Appointment of Associate Professor of Speech to the Chair of the Department

Attachment # 7: Confirmation fax and Proposal for Brazil seminar

Attachment # 8: Salary Documents for Senior Lecturer and Tenured Associate Professor Appointments

Attachment # 9: A Cohort Analysis of Salaries and Salary Rankings for 1992–93 Assistant and Associate Professors in Journalism

Attachment # 10: Personal Memo for Meeting with Dean Ellen Wartella, November 4, 1993

Attachment # 11: Documentation on the Prairie View A & M University Visit

Attachment # 12: Q & A with Dr. Berdahl on Appointment of Ellen Wartella as Dean of College of Communication

Attachment # 13: June 14, 1994 letter from Journalism's Standard 12/Minority Affairs Committee on Discriminatory Practices Against Minority Students

Attachment # 14: Excerpts from August 7, 1995 *University of Texas System Report of the Committee on the Advancement of Minorities,* March 3, 1997 Article, "The Unheard Voices: Faculty Speak Out about the Impact of Hopwood on the University of Texas"

Attachment # 15: E–Mail from Paula Poindexter to Dr. Maxwell McCombs Discussing Why Dean Ella Wartella Said Her Promotion Was Denied.[2]

As to the expert's affidavit, Hale averred in relevant part:

My name is Bill Hale. I have 26 years of experience in enforcing laws prohibiting employment discrimination as Executive Director of Human Rights Commissions including the Fort Worth, Texas, Commission and the Texas Commission on Human Rights. . . .

\*　　　\*　　　\*

On May 2, 2001, the Plaintiff submitted a letter to the U.S. Equal Employment Opportunity Commission (EEOC) setting forth in particular detail a series of adverse personnel actions including denial of promotion to professor she believed were discriminatory because of her race, African–American/Black. On May 23, 2001, the Plaintiff submitted a second letter to EEOC in part alleging

---

1. The listed documents are not attached to the letter in the record. Some of the documents are in the record.

2. Although all of the documents are not included in the record, some of the attachments were referenced and discussed during the hearing on the plea to the jurisdiction.

that discriminatory personnel actions were continuing subsequent to her communications with the Provost and the EEOC office, including but not limited to [the] denial of the opportunity to apply or be appointed to the position of associate chair of the Journalism Department.

The contents of these two letters are sufficiently specific to allege employment discrimination on the basis of race and retaliation. Both letters were submitted to EEOC within the 180 days from the date of the Defendant's alleged series of adverse personnel actions. Even though the EEOC did not perfect [the] charges until June 8, 2001 and May 7, 2002, the correspondence between the Plaintiff and EEOC was sufficient to trigger the administrative processing of charges of employment discrimination within 180 days from the date of the Defendant's adverse personnel actions. Even if EEOC failed to incorporate retaliation in the original perfected charge signed by the Plaintiff on June 8, 2001, according to *Sanchez v. Standard Brands, Inc.*,[3] the retaliation charge could reasonably be expected to grow out of the Plaintiff's original charge based on the correspondence submitted to EEOC on May 7, 2001 and May 23, 2001.

\* \* \*

In her letter dated May 23, 2001 to EEOC, the Plaintiff raised the inference of disparate impact. EEOC acknowledged this inference during its investigation. EEOC requested that the Defendant provide[ ] information regarding the racial composition of professors at the University of Texas at Austin. The Defendant provided this information. However, before EEOC could analyze the information according to the formula set forth in the EEOC Employee Selection Guidelines (80% rule) to determine any measurable disproportionate impact based on race, the Plaintiff requested the Right to Sue letter.

Hale also averred to the elements for each of Poindexter's claims. As to the prima facie case for disparate impact, Hale averred that Poindexter was "not required to statistically establish this impact. Such an analysis is done during the administrative investigation." Hale concluded that Poindexter "established the elements of a prima facie case for both disparate treatment and disparate impact as well as retaliation for purposes of filing a charge under Title VII and Chapter 21." Attached to Hale's affidavit was his preliminary expert report.[4]

---

3. *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir.1970).

4. The University filed a reply to Poindexter's response to the plea to the jurisdiction, attaching an affidavit from Linda H. Millstone. She averred:

> 1. I am currently the Deputy to the Vice President for Employee and Campus Services and the Director of Employment Opportunity Services at the University of Texas in Austin. . . .
>
> \* \* \*
>
> 6. No language in [the June 2001 charge], or in the communications I received from the EEOC concerning that charge, re-

flected any indication that Dr. Poindexter wished to assert any discrimination claim other than one for disparate treatment. At no time during the administrative process was I aware that Dr. Poindexter was asserting a claim of retaliation until the EEOC provided [the May 2002 charge]. At no time during the administrative process did I ever see any document reflecting that Dr. Poindexter was asserting a claim of disparate impact.

The University also attached the EEOC's investigation plan and a letter dated August 16, 2001, from an EEOC investigator to Poindexter providing the University's stated reasons for denying her promotion and asking for additional information.

### Retaliation

In reaching its conclusion that Poindexter did not timely file a retaliation claim, the majority concludes that the May 2002 charge raising retaliation was not timely and limits its review to the language found in the body of Poindexter's May 2001 letters and the June 2001 charge. *See* Tex. Lab.Code Ann. § 21.055 (West 2006).[5] The majority relies on the omission of the word "retaliation" or an appropriate "synonym" in Poindexter's May 2001 letters and the verification of her June 2001 charge, concluding that she "knew (and should have protested, if appropriate) the charge's contents long before she reviewed her EEOC file in mid–2002." The majority further concludes that section 21.201(f) of the labor code does not authorize relating the May 2002 charge back to the May 2001 letters or the June 2001 charge. *See id.* § 21.201(f).[6] The majority states that it has found no authority that "a later, separate charge" can relate back to an "earlier, perfected charge in its pre-perfected form" to support relation back to the letters and that the subject of retaliation does not relate to or arise from "the subject matter" of the June 2001 charge or the May 2001 letters. *See id.*

I would conclude that subsections (e), (f), and (g) of section 21.201 authorize the May 2002 charge to relate back to Poindexter's May 2001 letters, as "original complaints," that were filed with the EEOC within the 180 days statutory period and that, indulging every reasonable inference and resolving any doubts in Poindexter's favor, Poindexter's complaints in her letters to the EEOC with their respective attached documents included retaliation. *See id.* §§ 21.201(e), (f), (g),[7] 21.055; *Fellows v. Universal Rests., Inc.*, 701 F.2d 447, 450 (5th Cir.1983) (underlying policies not served "by limiting judicial relief to technical niceties of the language used by an often unlettered and unsophisticated employee in filing his or her initial grievance with EEOC"); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465 (5th Cir.1970) ("[S]pecific words of the charge of discrimination need not presage with literary exactitude the judicial pleadings which may follow."); *City of Waco v. Lo-*

5. Section 21.055 of the labor code states:

> An employer, labor union, or employment agency commits an unlawful employment practice if the employer, labor union, or employment agency retaliates or discriminates against a person who, under this chapter:
> (1) opposes a discriminatory practice;
> (2) makes or files a charge;
> (3) files a complaint; or
> (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing.

Tex. Lab.Code Ann. § 21.055 (West 2006).

6. Section 21.201 of the labor code sets out the requirements for filing an administrative complaint of employment discrimination. *See id.* § 21.201 (West 2006). Subsection (f) of this section states:

> (f) An amendment to a complaint alleging additional facts that constitute unlawful employment practices relating to or arising from the subject matter of the original complaint relates back to the date the complaint was first received by the commission.

*Id.* § 21.201(f).

7. Subsections (e) and (g) of section 21.201 read:

> (e) A complaint may be amended to cure technical defects or omissions, including a failure to verify the complaint or to clarify and amplify an allegation made in the complaint.
>
> * * *
>
> (g) If a perfected complaint is not received by the commission within 180 days of the alleged unlawful employment practice, the commission shall notify the respondent that a complaint has been filed and that the process of perfecting the complaint is in progress.

*Id.* § 21.201(e), (g).

*pez,* 259 S.W.3d 147, 151–52 (Tex.2008) ("[A]ctionable retaliation exists when an employer makes an adverse employment decision against an employee who voices opposition to conduct made unlawful under the CHRA, regardless of whether the employee has already filed a formal complaint with the Commission."); *Hennigan v. I.P. Petroleum Co.,* 858 S.W.2d 371, 373 (Tex. 1993) (verified complaint related back to and satisfied any deficiencies in unverified questionnaire that was timely filed); *Texas Tech Univ. v. Finley,* 223 S.W.3d 510, 514–15 (Tex.App.-Amarillo 2006, no pet.) (court, drawing distinction between "original complaint" and "perfected complaint," concludes letter, the "original complaint," satisfied jurisdictional requirements); *Stanley Stores v. Chavana,* 909 S.W.2d 554, 558–59 (Tex.App.-Corpus Christi 1995, writ denied) (complaint related back to date letter sent to EEOC complaining of employment discrimination).

The practice of the EEOC is to prepare the "formal charge" after receiving the complaint from the aggrieved employee. *See Brammer v. Martinaire, Inc.,* 838 S.W.2d 844, 846 (Tex.App.-Amarillo 1992, no writ); *see also City of La Joya v. Ortiz,* No. 13–06–401–CV, 2007 WL 293019, at *3 n. 5, 2007 Tex.App. LEXIS 818, at *11 n. 5 (Tex.App.-Corpus Christi Feb. 1, 2007, no pet.) (mem. op.) (regular practice for Texas Workforce Commission to prepare formal charge). Poindexter contends the EEOC mistakenly did not include her retaliation claim in the June 2001 charge even though she had raised the issue in her May 2001 letters. After being notified by Poindexter of the error, the EEOC's actions of preparing a subsequent charge of retaliation and issuing a right to sue letter as to her retaliation claim are consistent with Poindexter's position that her initial complaints—the May 2001 letters with attachments—raised retaliation within the 180-day statutory period but that the EEOC

mistakenly failed to include retaliation in the June 2001 charge. *See Federal Express Corp. v. Holowecki,* 552 U.S. 389, 128 S.Ct. 1147, 1160, 170 L.Ed.2d 10 (2008) ("Documents filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies."); *Bartosh v. Sam Houston State Univ.,* 259 S.W.3d 317, 321 (Tex.App.-Texarkana 2008, pet. filed) (court to "construe employment discrimination charges with the 'utmost liberality,' bearing in mind that such charges are generally prepared by laypersons untutored in the rules of pleading, though requiring that the charge contain an adequate factual basis so that it puts the employer on notice of the existence and nature of the charges") (citation omitted).

The right to sue letters issued by the EEOC and the TCHR on Poindexter's retaliation claim are additional support that Poindexter exhausted her administrative remedies as to that claim. *See Ortiz,* 2007 WL 293019, at *3, 2007 Tex.App. LEXIS 818, at *9 ("[T]he fact that the Texas Workforce Commission issued a right to sue letter, instead of dismissing the complaint as untimely, is additional evidence that the complaint was timely filed."); *Westbrook v. Water Valley Indep. School Dist.,* No. 03–04–00449–CV, 2006 WL 1194527, at *3, 2006 Tex.App. LEXIS 3845, at *10 (Tex.App.-Austin May 5, 2006, pet. denied) (mem. op.) ("Although an employee is not required to obtain a right to sue letter prior to filing suit, if the employee has received one, it evidences that she has exhausted her administrative remedies before the TCHR."); *see also* Tex. Lab.Code Ann. § 21.202(b) ("The commission shall dismiss an untimely complaint.").

I would, therefore, conclude that the trial court could have found that the evidence, viewed favorably, supports that Po-

indexter timely filed her initial complaint of retaliation with the EEOC in May 2001 that was perfected by the May 2002 charge to support the trial court's jurisdiction. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990) (when no findings of fact or conclusions of law are requested or filed, appellate court implies "that the trial court made all the findings necessary to support its judgment").[8]

## Disparate Impact

To support its conclusion that Poindexter failed to comply with the 180–day statutory period for filing a disparate-impact claim, the majority concludes that Poindexter failed to identify a facially neutral policy in the perfected complaints and in her correspondence to the EEOC. *See Pacheco v. Mineta*, 448 F.3d 783, 791 (5th Cir.2006) ("A disparate-impact plaintiff must show (1) a facially neutral policy; (2) that, in fact, has a disproportionately adverse effect on a protected class."); *see generally Ricci v. DeStefano*, 557 U.S. ——, 129 S.Ct. 2658, 174 L.Ed.2d 490 (explaining disparate-impact claims and applying standard in summary judgment context).[9] The majority concludes that her "administrative charges" "facially" allege only "disparate treatment" and "retaliation," "identif[y] no neutral employment policy," and complain only of past incidents of "retaliation" and "disparate treatment," and that her letters to the EEOC in May and October 2001 also failed because she did not identify a facially neutral policy that "disproportionally harmed black employees."[10]

A complaint to the EEOC is not limited by its express words, but is "limited only

---

8. Turning a blind eye to the evidence, the majority fails entirely to address Poindexter's affidavit; it only addresses Hale's statements in his affidavit that "the contents of [the May] letters are sufficiently specific to allege employment discrimination on the basis of race and retaliation" and that "a retaliation charge could reasonably be expected to grow out of" Poindexter's May correspondence. As to these statements, the majority concludes that Hale's assertions are legal conclusions that do not constitute probative evidence. I agree that legal conclusions "with no supporting facts or rationale" do not constitute probative evidence, but Hale averred in part as an expert on the EEOC's practices in conducting investigations of employment discrimination claims and as to the EEOC's particular actions in this case. *See McIntyre v. Ramirez*, 109 S.W.3d 741, 749 (Tex.2003). At the hearing on the plea to the jurisdiction, the University objected to Hale's affidavit in part on the ground that it contained legal conclusions. The trial court overruled the University's objection "to the extent that the Court will allow the affidavit for the limited purposes of his expertise of the policies and practices [of the EEOC].... I'm going to allow it for the purposes of his affidavit, and testimony as it relates to the evaluation of cases, and claims, and a determination or practice as it relates to this is what the investigation would look

like, and this is what they do and does it cover these issues, but the ultimate issue or legal issue is made by the Court."

9. As the Supreme Court explained,

Title VII prohibits both intentional discrimination (known as "disparate treatment") as well as, in some cases, practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities (known as "disparate impact").

\* \* \*

Under the disparate-impact statute, a plaintiff establishes a prima facie violation by showing that an employer uses a "particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin."

557 U.S. ——, 129 S.Ct. 2658, 2673, 174 L.Ed.2d 490 (quoting 42 U.S.C. § 2000e–2(k)(1)(A)(i) (2009)); *see also id.* at 2689–90 (Ginsburg, J., dissenting) ("In assessing claims of race discrimination, '[c]ontext matters.'" (quoting *Grutter v. Bollinger*, 539 U.S. 306, 327, 123 S.Ct. 2325, 156 L.Ed.2d 304 (2003))).

10. The majority also concludes that the October 2001 letter was irrelevant in determining whether Poindexter's charge alleged disparate impact.

by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." *See Fellows,* 701 F.2d at 450–51. The Court of Appeals for the Fifth Circuit explained the policy reason for this rule:

> The Civil Rights Act is designed to protect those who are least able to protect themselves. Complainants to the EEOC are seldom [represented by] lawyers. To compel the charging party to specifically articulate in a charge filed with the Commission the full panoply of discrimination which he may have suffered may cause the very persons Title VII was designed to protect to lose that protection because they are ignorant of or unable to thoroughly describe the discriminatory practices to which they are subjected.... [A] cause of action for Title VII employment discrimination may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination.

*Id.* (internal citations omitted). Additionally, a disparate-impact claim may be based upon the "decision-making process" as the challenged "employment practice." *See* Tex. Lab.Code Ann. § 21.122(c) (West 2006) ("decision-making process may be analyzed as one employment practice" when "elements of a respondent's decision-making process are not capable of separation for analysis");[11] *see also* 42 U.S.C. § 2000e–2(k)(1)(B)(i) (2009); *Ricci,* 557 U.S. at ——, 129 S.Ct. at 2672–73. With these principles in mind, I turn then to a review of the evidence to determine if it supports a finding that an investigation of disparate impact based upon "a particular employment practice" of the University "could reasonably be expected to grow out" of Poindexter's initial charges. *See* Tex. Lab.Code Ann. § 21.122; *Miranda,* 133 S.W.3d at 228; *Fellows,* 701 F.2d at 450–51.

During the 180–day statutory period, Poindexter provided the EEOC with copies of the University's promotion guidelines from the handbook of operating procedures and her letter to the University documenting her complaint. She addressed the promotion process in her letter dated May 23, 2001, and quoted statistics showing a similar pattern throughout

**11.** Section 21.122 of the labor code provides the burden of proof in disparate impact cases in pertinent part:

(a) An unlawful employment practice based on disparate impact is established under this chapter only if:

(1) a complainant demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, sex, national origin, religion, or disability and the respondent fails to demonstrate that the challenged practice is job-related for the position in question and consistent with business necessity; or ...

\* \* \*

(c) To demonstrate that a particular employment practice causes a disparate impact, the complainant must demonstrate that each particular challenged employment practice causes a disparate impact, except that if the complainant demonstrates to the satisfaction of the court that the elements of a respondent's decision-making process are not capable of separation for analysis, that decision-making process may be analyzed as one employment practice.

(d) If the respondent demonstrates that a specific practice does not cause a disparate impact, the respondent may not be required to demonstrate that the practice is consistent with business necessity.

Tex. Lab.Code Ann. § 21.122 (West 2006).

the University adverse to women and African–Americans. In the letter, she states:

Since 1992, six males (five white and one Brazilian) have become full professors in the Department of Journalism. Four were promoted from associate to full professor, including the one who was promoted the year before my promotion was denied. During that same period, no women and no African–Americans have been promoted to the full professor rank. Statistics from the Office of Institutional Studies would indicate that this pattern can be found throughout The University of Texas at Austin.

During the EEOC investigation, Poindexter provided the EEOC with a copy of the Report of the Committee on the Advancement of Minorities that states as to the University's guidelines:

Although there are System-wide guidelines for granting promotions and tenure, the component institutions—and often smaller academic units (schools, colleges, divisions, etc.)—set forth their own specific criteria for meeting the guidelines. Based on interviews with faculty, it is apparent to the Committee that criteria often are not clear or explicit. In addition, interpretation of the criteria is not uniform, often being left to department heads and deans. Further, criteria are often very general and easily lead to interpretations that may exclude minorities. Thus, while the written criteria may not be discriminatory, the unspoken judgments and interpretations may have that effect.[12]

Hale averred that the EEOC acknowledged Poindexter's "inference [of disparate impact] during its investigation" based on the fact that the "EEOC requested that the Defendant provide[ ] information regarding the racial composition of professors at the University of Texas at Austin." Two categories of information that the EEOC requested from the University were:

1. A list showing all Associate Professors within the University of Texas at Austin who have sought promotion to Professor between the dates April 1, 1999 and January 25, 2002. For each individual listed, please provide name, race, date of hire, department, college, date(s) that the individual applied for promotion to Professor, and final decision concerning each promotion application.

2. For each individual identified in the list of applicants for promotion to full Professor, please provide a copy of each recommendation statement from the appropriate Department Budget Council, Department Chairman/Director, and Dean; and a copy of each "Recommendation for Change in Academic Rank/Status" form.

The majority's conclusion that the trial court did not have jurisdiction because Poindexter failed to identify a neutral policy in her administrative charge improperly disregards evidence favorable to Poindexter, delving into the merits of her disparate-impact claim. See Bland Ind. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000). Based on the evidence before the trial court, I would conclude that the trial court could have found that the evidence favorable to Poindexter supports a finding

12. Consistently, in her briefing to this Court, Poindexter identifies the "six-prong promotion policy of the University of Texas," and her attorney at the hearing on the plea to the jurisdiction identified "the criteria used by the University; that those criteria, as a whole ... that these unwritten, unknown standards and policies that they use ... have disparate impact on racial and ethnic minorities."

that an investigation of disparate impact based on a "particular employment practice" of the University or its "decision-making process" for promotions "could reasonably be expected to grow out of [her] initial charges of discrimination." *See* Tex. Lab.Code Ann. § 21.122; *Miranda*, 133 S.W.3d at 228; *Fellows*, 701 F.2d at 450–51.[13]

The majority finds *Pacheco* "highly instructive" in reaching its holding "that, as a matter of law, Poindexter's communications with the EEOC did not satisfy the legal requirements for exhausting a disparate-impact charge." *Pacheco* is distinguishable on its facts. In *Pacheco*, the Court of Appeals for the Fifth Circuit affirmed the dismissal of the plaintiff's disparate-impact claim for failure to exhaust administrative remedies, but the court sets forth the appropriate analysis as fact-intensive: "We engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." 448 F.3d at 789. In contrast to the correspondence between Poindexter and the EEOC, the plaintiff in *Pacheco* was sent a letter notifying him of the claim that was accepted for investigation [14] and that "if he objected to the way his claim was stated, he should

contact the Office within five days"; the plaintiff did not respond. *Id.* at 786. The court also did not address conflicting evidence as to the substance of the "administrative charge" and the "initial charges of discrimination." *See, e.g., id.* at 792 n. 15 (newspaper article that acknowledged statistical underrepresentation of Hispanics in federal agencies not relevant to exhaustion question because "it was not submitted to the EEO, but was produced by [the plaintiff], after suit was filed in district court").

In conclusion, because the majority disregards evidence favorable to Poindexter, the non-movant, I concur only in the portion of the opinion reversing the trial court's order as to Poindexter's claims based on chapter 106 of the civil practice and remedies code and respectfully dissent to the remaining portions of the opinion reversing the trial court's order on a plea to the jurisdiction as to Poindexter's retaliation and disparate-impact claims and short-circuiting this litigant's day in court.[15]

---

**13.** The trial court also could have concluded that an investigation of retaliation "could reasonably be expected to grow out of [Poindexter's] initial charges of discrimination" as an alternative basis for affirming the trial court's denial of the University's plea to the jurisdiction as to her retaliation claims. *See Fellows v. Universal Rests., Inc.*, 701 F.2d 447, 450–51 (5th Cir.1983); *Texas Dep't of Crim. Justice v. Young*, No. 09–07–00635–CV, 2008 WL 4425542, at *7, 2008 Tex.App. LEXIS 7350, at *17–19 (Tex.App.-Beaumont Oct. 2, 2008, no pet.) (mem. op.) (retaliation claim "factually related claim [ ] that could reasonably be expected to grow out of" an investigation of the plaintiff's race and gender discrimination complaints) (citation omitted); *City of La Joya v. Ortiz*, No. 13–06–401–CV, 2007 WL 293019,

at *4, 2007 Tex.App. LEXIS 818, at *13–15 (Tex.App.-Corpus Christi Feb. 1, 2007, no pet.) (mem. op.) (retaliation claim stated in intake questionnaire but not alleged in administrative charge "could be expected to grow out of her charge").

**14.** The claim stated in the letter was: "Whether the FAA treated you differently, based on your national origin (Hispanic), when you were not selected for a supervisor's job." *Pacheco v. Mineta*, 448 F.3d 783, 786 (5th Cir.2006).

**15.** An alternative ground for affirming the trial court as to both the retaliation and the disparate-impact claims would be to imply

that the trial court in its discretion denied the plea to the jurisdiction to "await a fuller development of the case." *See Texas Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 227 (Tex.2004); *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990). The majority concludes that an abuse-of-discretion standard does not apply "because the trial court did not purport to exercise its discretion in this regard." Because the trial court did not make findings of fact and conclusion of law, however, we are to affirm the trial court's order denying the plea to the jurisdiction if it can be upheld on any legal theory that finds support in the evidence. *See Miranda,* 133 S.W.3d at 227; *Worford,* 801 S.W.2d at 109 ("The judgment must be affirmed if it can be upheld on any legal theory that finds support in the evidence.").