

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-22-00563-CV

Roberto **VILLARREAL**, Ramona Villarreal,
Viola Villarreal Garcia, and Gloria Villarreal Salinas,
Appellants

v.

Javier **RAMIREZ**, as Co-Trustee of the Ramirez Mineral Trust; Sonia Rodriguez, as Co-Trustee of the Ramirez Mineral Trust; Victor M. Ramirez, as Co-Trustee of the Ramirez Mineral Trust; Santiago Ramirez Jr., as Co-Trustee of the Ramirez Mineral Trust; Sonia Rodriguez, Individually and as Heir to the Estate of Blas Garza Jr.; Blas Garza III, Individually and as Heir to the Estate of Blas Garza Jr.; Priscilla Garza Lozano, Individually and as Heir to the Estate of Blas Garza Jr.; All Unknown Heirs of the Estate of Blas Garza Jr.; Sonia Rodriguez, as Co-Executor of the Estate of Blas Garza Jr.; Blas Garza III, Individually as Co-Executor of the Estate of Blas Garza Jr.; Priscilla Garza Lozano, as Co-Executor of the Estate of Blas Garza Jr.; and Javier Ramirez,
Appellees

From the 49th Judicial District Court, Zapata County, Texas
Trial Court No. 5,937
Honorable José A. López, Judge Presiding

Opinion by:   Patricia O. Alvarez, Justice

Sitting:      Patricia O. Alvarez, Justice
              Luz Elena D. Chapa, Justice
              Liza A. Rodriguez, Justice

Delivered and Filed: January 3, 2024

REVERSED AND REMANDED

In this dispute involving proceeds from oil and gas leases, Appellants argue the trial court erred by granting Appellees' plea to the jurisdiction and dismissing the case. Appellants contend

they have live claims, their claims are not barred by res judicata, and their quasi-admissions did not negate the trial court's jurisdiction.

Appellees argue that the trial court's Agreed Final Judgment was final, it disposed of all parties and all claims, and the trial court could have granted their plea based on standing, mootness, judicial admissions, or "finality of judgments."

Because Appellants met their burden to plead facts showing the trial court's jurisdiction, and none of the grounds in Appellees' plea negated the trial court's subject matter jurisdiction, we reverse the trial court's order and remand this cause.

## BACKGROUND

The underlying dispute over the ownership of surface and mineral estates, leases, and proceeds has involved multiple parties, suits, claims, and defenses. For purposes of this appeal, we limit our recitation of facts to those that pertain to the issues now before us.

## A.  Parties[1]

Appellants, who are now plaintiffs below, are members of the Villarreal family: Roberto Villarreal, Ramona Villarreal, Viola Villarreal Garcia, and Gloria Villarreal Salinas (collectively the Roberto Group).

Appellees, who are now defendants below, include members of the Ramirez family, primarily those who are co-trustees of the Ramirez Mineral Trust, and others (collectively the Ramirezes).

Earlier defendants included Chesapeake Zapata, L.P. and Chesapeake Operating, Inc. (collectively Chesapeake).

---

[1] The pleadings below define the parties: plaintiffs, intervenors, and defendants. Over the course of the underlying litigation, the parties in the suit have changed. Our description of the parties is for the reader's benefit; it is not a legal determination.

**B.      Original Suit (5937)**

In 2002, an oil and gas production company executed a lease with the Ramirez Mineral Trust for about 734 acres, and that lease was later assigned to Chesapeake.  Chesapeake drilled two wells on property it understood it had leased, but the Villarreals claimed the wells were sited on their property.

In April 2005, members of the Villarreal family sued Chesapeake, the Ramirez Mineral Trust, and members of the Ramirez family; the suit was assigned cause number 5937.  Two of the Villarreal plaintiffs were Gloria Villarreal Salinas and Viola Villarreal Garcia.  In June 2007, Roberto and Ramona Villarreal intervened.

In a hearing on August 31, 2010, the plaintiffs and intervenors confirmed that "[w]e seek not a penny from the Ramirezes . . . and it's a stipulation on this case."

A few weeks later, the plaintiffs filed their seventh amended petition, and the intervenors filed their second amended plea in intervention.  The pleadings identified Chesapeake, the Ramirezes, and others as defendants; they included claims for trespass to try title, trespass to real property, conversion, constructive trust, enhanced value damages, attorney's fees, accounting, and violation of the Natural Resources Code.

**C.      Settlement Agreement**

After some negotiations, the plaintiffs and intervenors who controlled more than 98% of the mineral interests reached an agreement with Chesapeake.  On January 26, 2011, in open court, the parties advised the trial court they had reached an agreement, and it was read into the record.

Under the settlement agreement, Chesapeake was to lease about 1,600 acres from the Villarreals for a period of ten years with a 22.5% royalty and a bonus of about $2.5 million.  The agreement would resolve competing property ownership claims between the Villarreals and the Ramirezes.  The Villarreals would execute quit claim deeds to the Ramirezes for a particular sixty-

seven-acre tract, and for another approximately 3,718 acres. In turn, the Ramirezes would execute quit claim deeds to the Villarreals for the surface and mineral estates for about 2,024 acres.

**D.      Actions on Settlement Agreement**

In March 2011, Chesapeake sent the Roberto Group proposed leases for the approximately 238 acres the Roberto Group believed it owned. After the Roberto Group learned that they did not own all of the mineral interest in the 238 acres, they advised Chesapeake, and it sent them revised leases covering about 223 acres.

Some of the parties disagreed on how to implement the settlement agreement, but in September 2011, they agreed to mediate, and the court ordered mediation.

**E.      Status Hearing on Settlement Agreement**

On October 4, 2011, the trial court held a hearing on the parties' progress on finalizing the settlement agreement.

The parties proposed some modifications to the settlement agreement. For example, the parties would not execute quit claim deeds; instead, the conveyances would be included in the judgment. The Roberto Group explained that they had conveyed some interest in the 223 acres to another party, their mineral interest was reduced by those conveyances, and their bonus should be reduced accordingly. Chesapeake agreed that the "leases and the consideration would be adjusted proportionately."

After additional colloquy, in concluding the hearing, the trial court noted that the judgment would incorporate "the terms of the announcement made on January 2011 and modified only by what was announced here today and agreed to by the parties."

**F.      Severance Order**

After the status hearing, several of the Villarreals, not including those in the Roberto Group, moved to sever their claims against Chesapeake and the Ramirezes. In December 2011,

the trial court granted the motion, and the claims for the "Certain Villarreal Plaintiffs-Intervenors" were severed into cause 5937-A.

## G.     Agreed Final Judgment

On January 18, 2012, the trial court signed a fifty-three-page Agreed Final Judgment.

One of its provisions was that "[t]he settlement agreement will require the signature of all the parties."  The Agreed Final Judgment had signature blocks for the Ramirez Mineral Trust trustees, the Ramirez surface owners, and the remaining Villarreal Plaintiffs-Intervenors.  It did not have signature blocks for the Roberto Group members, and none of them signed it.

Another provision stated that "the non-signing parties to this Agreed Final Judgment will be severed into a new cause upon entry of said Agreed Final Judgment and the Court will then proceed to hear and determine the summary judgment motions affecting the non-signing parties."

But the record does not show that the Roberto Group's claims were severed.

## H.     Post-Judgment Actions

The Roberto Group criticized the Agreed Final Judgment because it had substantive defects in their property descriptions.  It required them to convey interests they did not own, and they did not sign it.  But they insist they worked diligently to determine their ownership interests in the acreage to be leased to Chesapeake.

In August 2014, the Roberto Group advised Chesapeake that they had executed a mineral partition deed which finally resolved the mineral interest ownership for their acreage.  Their total acreage available to be leased by Chesapeake was now 189.68 acres.  The Roberto Group asked Chesapeake "to start preparing the final deeds and lease agreement the Parties agreed upon," but Chesapeake did not.

**I.      Roberto Group Sues Chesapeake (8848)**

In November 2014, the Roberto Group sent Chesapeake a "Presentment of Claim" letter. Without mentioning the Agreed Final Judgment, the letter asserted that the settlement agreement that was read into the record on January 26, 2011, was still in effect, it was a binding contract requiring Chesapeake to lease the Roberto Group's acreage, and Chesapeake's failure to do so would be a breach of contract.

The next month, after Chesapeake refused to execute a lease, the Roberto Group sued Chesapeake; the suit was assigned cause number 8848. The Roberto Group's claims included breach of contract, promissory estoppel, specific performance, and attorney's fees.

In October 2018, the trial court granted Chesapeake's no-evidence motion for summary judgment against the Roberto Group's claims, and the Roberto Group's attempted appeal was dismissed as untimely. *See Villarreal v. Chesapeake Zapata, L.P.*, No. 04-19-00071-CV, 2019 WL 1370170, at *1 (Tex. App.—San Antonio Mar. 27, 2019, no pet.) (mem. op.) (per curiam).

**J.      Eighth Amended Petition**

In September 2019, in cause number 5937, the Roberto Group filed their eighth amended petition against only Chesapeake. The petition included these claims: trespass to try title, trespass to real property, conversion, constructive trust, enhanced value damages, attorney's fees, accounting, violation of the Natural Resources Code, breach of contract, and declaratory judgment.

**K.      Chesapeake Bankruptcy**

In June 2020, Chesapeake Energy Corporation filed for bankruptcy. *In re Chesapeake Energy Corp.*, 622 B.R. 274, 276 (Bankr. S.D. Tex. 2020). In February 2021, Chesapeake was discharged in bankruptcy.

**L.     Ninth Amended Petition**

In June 2021, the Roberto Group filed their Ninth Amended Petition.  It nonsuited Chesapeake, and it added the Ramirezes as defendants.  The amended claims include the following: trespass to try title, trespass to real property, constructive trust, attorney's fees, accounting, declaratory judgment, unjust enrichment, breach of contract, and in the alternative, promissory estoppel.

**M.     Plea to the Jurisdiction, Motion to Dismiss**

In April 2022, the Ramirezes filed a plea to the jurisdiction.  Their plea challenged the existence of jurisdictional facts, and it argued the trial court lacked subject matter jurisdiction over the Roberto Group's suit based on five grounds: (1) the Roberto Group lacks standing because there is no live controversy, (2) their claims are moot, (3) they previously judicially admitted they were not seeking damages against the Ramirezes, (4) the summary judgment against the Roberto Group's claims in cause 8848 barred those same claims in this suit, and (5) the January 18, 2012 Agreed Final Judgment deprived the trial court of jurisdiction "under principles of 'finality of judgments.'"

**N.     Plea Granted, Motion for New Trial, Notice of Appeal**

The trial court held a hearing on the plea, but no witnesses testified, and no additional evidence was offered.  The parties presented their arguments, and the trial court decided the plea on the pleadings and the records for cause 5937 and "the other cases filed in this Court as referenced in the Plea."  At the conclusion of the hearing, the trial court announced its decision: "This Court lacks jurisdiction to decide the controversy, because the case is moot."  In its written order, without stating the reason for its decision,[2] the trial court granted the Ramirezes' plea and

---

[2] *See In re A.S.G.*, 345 S.W.3d 443, 448 (Tex. App.—San Antonio 2011, no pet.) ("[A] written order controls over a trial court's oral pronouncement when there is an inconsistency.").

dismissed the case. The Roberto Group moved for a new trial, the motion was not granted, and the Roberto Group now appeals.

### APPELLATE ISSUES

**A.      Roberto Group's Arguments**

On appeal, the Roberto Group argues the trial court's order improperly granted the Ramirezes' plea, and they present three issues to challenge it.

First, the plea could not be granted on standing or mootness because their Ninth Amended Petition pled facts alleging that the Agreed Final Judgment did not dispose of their then-pending claims, they now have additional claims against the Ramirezes, and their claims are a live controversy which invoked the trial court's jurisdiction.

Second, a plea to the jurisdiction cannot be granted based on res judicata because it is an affirmative defense.

Third, their challenged statements were not conclusive and did not deprive the trial court of jurisdiction.

**B.      Ramirezes' Arguments**

The Ramirezes argue that the trial court properly granted their plea because the Roberto Group had no remaining live controversy or justiciable interest and their requested declaratory judgment claims were moot. To support their argument, they note that the Agreed Final Judgment (1) does not require them to pay the Roberto Group anything, (2) decreed that the Roberto Group take nothing from them, and (3) discharged them from the case. They add that the Roberto Group's statements that their claims were against Chesapeake and they "seek not a penny from the Ramirezes" were stipulations that required the trial court to (1) conclude that no justiciable controversy existed at that time and (2) grant their plea. Finally, they note that the order does not

state that it was granted on res judicata, and it could have been granted for lack of a justiciable controversy or mootness.

## C.       Initial Question

The parties dispute whether the Agreed Final Judgment was a final judgment that disposed of all claims and all parties and was appealable.  We begin with that question.

### AGREED FINAL JUDGMENT

Before we recite the Agreed Final Judgment's provisions that relate to its intended finality, we briefly review the applicable law.

## A.       Discerning Intent for Finality

"Although no 'magic language' is required, a trial court may express its intent to render a final judgment by describing its action as (1) final, (2) a disposition of all claims and parties, and (3) appealable." *Bella Palma, LLC v. Young*, 601 S.W.3d 799, 801 (Tex. 2020) (per curiam) (citing *In re R.R.K.*, 590 S.W.3d 535, 543 (Tex. 2019) (per curiam)); *accord Patel v. Nations Renovations, LLC*, 661 S.W.3d 151, 155 (Tex. 2023) (per curiam).

"'Clear and unequivocal' language that reflects an intent to dispose of the entire case is given effect, *but when there is doubt about finality*, the record resolves the issue." *Bella Palma*, 601 S.W.3d at 801–02 (quoting *In re R.R.K.*, 590 S.W.3d at 541 (emphasis added)).

## B.       Judgment Language

The fifty-three-page Agreed Final Judgment contains the following provisions that pertain to its intent for finality:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED THAT Villarreal Plaintiffs-Intervenors take nothing on their claims and causes of action in this cause, and that Chesapeake, the Ramirez Defendants and the Ramirez Mineral Trust be in all things discharged.
>
> . . . .

IT IS FURTHER ORDERED, ADJUDGED AND DECREED THAT the Court shall retain continuing jurisdiction over the Parties and this Agreed Final Judgment for any and all purposes related to this settlement, including all rights, duties and obligations arising herein.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED THAT the Parties and their respective attorneys cooperate fully and use their best efforts to effectuate the terms and conditions of this Agreed Final Judgment, including the execution of all necessary documents, such as, by example only and not by limitation, deeds, assignments, and leases, whether expressly identified in this Agreed Final Judgment or not, as soon as possible after the signing of this Agreed Final Judgment.

. . . .

This Agreed Final Judgment is final and disposes of all claims by and between the Parties, except as expressly ordered otherwise in this Agreed Final Judgment.

This is a Final Judgment. All relief requested not hereby granted is denied. The Parties are hereby granted all writs necessary to the enforcement of this Final Judgment.

Each party shall pay their own attorney's fees and court costs are taxed against the party incurring same.

**C.      Intent for Action to be Final**

The first indicator of a trial court's "intent to render a final judgment [is by it] describing its action as . . . final." *Patel*, 661 S.W.3d at 155; *Bella Palma*, 601 S.W.3d at 801.

The Agreed Final Judgment unquestionably establishes this first indicator: it expressly states "This is a Final Judgment," its title is "Agreed Final Judgment," and it repeatedly refers to itself as "this Agreed Final Judgment." *See Patel*, 661 S.W.3d at 155; *Bella Palma*, 601 S.W.3d at 801.

**D.      Intent to Dispose of All Claims and Parties**

The second indicator of a trial court's "intent to render a final judgment [is by it] describing its action as . . . a disposition of all claims and parties." *Patel*, 661 S.W.3d at 155; *Bella Palma*, 601 S.W.3d at 801.

*1.    Language Addressing All Claims and Parties*

The Agreed Final Judgment orders that the "Villarreal Plaintiffs-Intervenors take nothing on their claims and causes of action in this cause, and that Chesapeake, the Ramirez Defendants and the Ramirez Mineral Trust be in all things discharged."  It also states that it "is final and disposes of all claims by and between the Parties."  And it adds the following: "All relief requested not hereby granted is denied. The Parties are hereby granted all writs necessary to the enforcement of this Final Judgment. Each party shall pay their own attorney's fees and court costs are taxed against the party incurring same."

But "[a]n order does not dispose of all claims and all parties merely because it is entitled 'final', or because the word 'final' appears elsewhere in the order, *or even because it awards costs*." *Farm Bureau Cnty. Mut. Ins. Co. v. Rogers*, 455 S.W.3d 161, 163 (Tex. 2015) (per curiam) (quoting *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 205 (Tex. 2001), *superseded in part by statute on other grounds as recognized by Indus. Specialists, LLC v. Blanchard Ref. Co. LLC*, 652 S.W.3d 11, 14 (Tex. 2022)).  As the supreme court has repeatedly required, "there must be some other clear indication that the trial court intended the order to completely dispose of the entire case." *Patel*, 661 S.W.3d at 155 (quoting *Lehmann*, 39 S.W.3d at 205); *Rogers*, 455 S.W.3d at 163; *accord Bella Palma*, 601 S.W.3d at 802.

*2.    Express Exception to All Claims and Parties*

The Ramirezes emphasize the Agreed Final Judgment's statement that it "is final and disposes of all claims by and between the Parties."  But the full statement reads as follows: "This Agreed Final Judgment is final and disposes of all claims by and between the Parties *except as expressly ordered otherwise in this Agreed Final Judgment*."  (Emphasis added).

The Agreed Final Judgment's express exception to a final disposition of all claims and all parties shows that it does not "clearly and unequivocally state[] that it finally disposes of all claims

and parties." *See Patel*, 661 S.W.3d at 154; *Rogers*, 455 S.W.3d at 163 (noting that to express its intent to be final, a judgment must "state[] with unmistakable clarity that it is a final judgment as to all claims and all parties").

### 3. Remaining Claims and Parties

The Agreed Final Judgment does not expressly dispose of the claims of Viola Villarreal Garcia and Gloria Villarreal Salinas. They are plaintiffs in the Seventh Amended Petition, the then-live pleading when the Agreed Final Judgment was signed. It decreed that the "Villarreal Plaintiffs-Intervenors take nothing on their claims and causes of action in this cause," but Viola and Gloria are not included in the Villarreal Plaintiffs-Intervenors group, and their claims are not expressly disposed of elsewhere.

The Agreed Final Judgment states that "[a]ll relief requested not hereby granted is denied," but a "Mother Hubbard clause is not conclusive of finality when other aspects of the order render the meaning of the clause uncertain." *See In re R.R.K.*, 590 S.W.3d at 541. In this case, the Agreed Final Judgment's express exception to its own finality, and its continuing jurisdiction provision, which we discuss next, are "other aspects of the order [which] render the meaning of the clause uncertain." *See id.* Thus, the Agreed Final Judgment's Mother Hubbard clause does not conclusively establish that the trial court intended the Agreed Final Judgment to be final. *See id.*

### 4. Continuing Jurisdiction Provision

The Agreed Final Judgment also orders that "the Court shall retain continuing jurisdiction over the Parties and this Agreed Final Judgment for any and all purposes related to this settlement, including all rights, duties and obligations arising herein." We examine the provision's intent in light of the applicable law.

A trial court retains power to enforce its judgment after its plenary power over the judgment ends. *Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chem. Co., L.P.*, 540

S.W.3d 577, 581 (Tex. 2018); *Custom Corps., Inc. v. Sec. Storage, Inc.*, 207 S.W.3d 835, 839 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (citing TEX. R. CIV. P. 308).

But the Agreed Final Judgment's continuing jurisdiction provision is much broader. It does not merely state that the trial court retains power over the Agreed Final Judgment for the purpose of enforcing it, which would just acknowledge the applicable law. *See* TEX. R. CIV. P. 308; *Alexander Dubose*, 540 S.W.3d at 581.

Instead, it "retain[s] continuing *jurisdiction* over the Parties . . . for any and all purposes *related* to this *settlement*, including all rights, duties and obligations *arising* herein." (emphasis added). This language shows an intent to continue the trial court's jurisdiction to decide matters that relate to the settlement and questions that may arise which were not decided by the Agreed Final Judgment.

The parties could agree to litigate their future disputes regarding their claims in the same trial court, but neither they nor the trial court had the authority to extend the court's jurisdiction beyond the periods established for a final judgment in the applicable statutes and rules. *See, e.g.*, TEX. R. CIV. P. 306a, 329b; *In re Vaishangi, Inc.*, 442 S.W.3d 256, 260 (Tex. 2014) (orig. proceeding) (per curiam) (confirming that if a "trial court's plenary power ha[s] expired, a party [can] not 'reinvest the trial court that dismissed the case with jurisdiction to enforce the settlement agreement' by filing a post-judgment motion to enforce the agreement" (quoting *Univ. Gen. Hosp., LP v. Siemens Med. Sols. USA, Inc.*, No. 01-12-00174-CV, 2013 WL 772951, at *3 (Tex. App.—Houston [1st Dist.] Feb. 28, 2013, no pet.) (mem. op.))).

Given "a trial court can render only one judgment in a case," *In re Vaishangi, Inc.*, 442 S.W.3d at 260 (citing TEX. R. CIV. P. 301), and parties may not agree to extend a trial court's jurisdiction beyond the prescribed periods, *id.*, the provision that the trial court "shall retain continuing *jurisdiction* over the Parties . . . for any and all purposes *related* to this *settlement*,

including all rights, duties and obligations *arising* herein" indicates that the trial court understood that the Agreed Final Judgment was not yet final as to all claims and all parties, and its jurisdiction over the parties for even related matters would continue, as the judgment states, until all the "purposes related to this settlement" have been accomplished. *See, e.g.*, TEX. R. CIV. P. 306a; *In re Vaishangi, Inc.*, 442 S.W.3d at 260.

5.     *Insights from the Record*

The Agreed Final Judgment's express exception to a final disposition of all claims and all parties, the remaining claims and parties, and the judgment's continuing jurisdiction provision raise doubts about the trial court's intent to render a final judgment; accordingly, "we [will] examine the record to determine the trial court's intent." *See In re R.R.K.*, 590 S.W.3d at 543; *see also Bella Palma*, 601 S.W.3d at 801–02 ("[*W*]hen there is doubt about finality, the record resolves the issue." (quoting *In re R.R.K.*, 590 S.W.3d at 541 (emphasis added))).

The Agreed Final Judgment "require[s] the signatures of all the parties," but the record confirms that the Roberto Group members did not sign the Agreed Final Judgment.

It also states that "the non-signing parties to this Agreed Final Judgment will be severed into a new cause upon entry of said Agreed Final Judgment and the Court will then proceed to hear and determine the summary judgment motions affecting the non-signing parties," but the record does not show that the Roberto Group members' claims were severed.

6.     *Disposition Intent*

Having read it in its entirety, we conclude the Agreed Final Judgment does not clearly and unequivocally express "an intent to dispose of the entire case." *See Bella Palma*, 601 S.W.3d at 801–02; *see also Patel*, 661 S.W.3d at 155; *Rogers*, 455 S.W.3d at 163.

**E.      Intent for Action to be Appealable**

The third indicator of the trial court's "intent to render a final judgment [is by it] describing its action as . . . appealable." *Patel*, 661 S.W.3d at 155; *Bella Palma*, 601 S.W.3d at 801. The Agreed Final Judgment does not state that it is appealable or otherwise mention or address its appealability.

**F.      Agreed Final Judgment Not Final**

The Agreed Final Judgment's indicia of the trial court's intent are mixed. The first established the trial court's intent to be "final," but the second did not "clearly and unequivocally state[] that it finally disposes of all claims and parties," and the third did not identify its action as appealable. *Cf. Patel*, 661 S.W.3d at 155; *Bella Palma*, 601 S.W.3d at 801; *Rogers*, 455 S.W.3d at 163. We conclude the Agreed Final Judgment is not a final, appealable judgment.

Having made that determination, we recite the standard of review for the trial court's decision granting a plea to the jurisdiction that challenged the existence of jurisdictional facts.

### STANDARD OF REVIEW

"[I]f a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004); *accord Univ. of Tex. v. Poindexter*, 306 S.W.3d 798, 806 (Tex. App.—Austin 2009, no pet.) (citing *Miranda*, 133 S.W.3d at 228).

"Where the jurisdictional issue or facts do *not* implicate the merits of the case, and . . . the facts relevant to jurisdiction are undisputed, the court should make the jurisdictional determination as a matter of law based solely on those undisputed facts." *Poindexter*, 306 S.W.3d at 806 (citing *Miranda*, 133 S.W.3d at 228).

- 15 -

We review a trial court's determination of its subject matter jurisdiction de novo. *Id.* (citing *Miranda*, 133 S.W.3d at 226).

## LIVE CONTROVERSY

In their first issue, the Roberto Group argues the trial court erred in granting the Ramirezes' plea to the jurisdiction and dismissing their suit because the Agreed Final Judgment did not dispose of all their claims and their Ninth Amended Petition presents new, cognizable claims against the Ramirezes. Therefore, according to the Roberto Group, they have standing to sue because their claims present justiciable interests which are not moot.

The Ramirezes argue the trial court could have granted their plea and dismissed the case based on the grounds in their plea, including standing, mootness, and "finality of judgments."

Before we address these arguments, we repeat some of the background information.

### A. Live Pleading's Claims

When the Ramirezes filed their plea to the jurisdiction, the live pleading they challenged was the Roberto Group's Ninth Amended Petition. The petition realleged five claims that were pending before the Agreed Final Judgment was signed: trespass to try title, trespass to real property, constructive trust, attorney's fees, and accounting. It also included four claims that were added after the Agreed Final Judgment was signed: declaratory judgment, unjust enrichment, breach of contract, and in the alternative, promissory estoppel.

### B. Standing Ground

The Ramirezes' plea asserted the Roberto Group lacked standing to bring any of their claims, but it did not explain why; it did not identify any specific elements or jurisdictional facts that the pleading lacked.

*1.      Standing Requirements*

"A defendant may challenge a plaintiff's standing by filing a plea to the jurisdiction." *Farmers Tex. Cnty. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 241 (Tex. 2020); *accord Miranda*, 133 S.W.3d at 226.

"To establish standing in Texas, a plaintiff must allege 'a concrete injury . . . and a real controversy between the parties that will be resolved by the court.'" *Beasley*, 598 S.W.3d at 241 (quoting *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 154 (Tex. 2012)). "The burden is on the plaintiff to affirmatively demonstrate the trial court's jurisdiction." *Heckman*, 369 S.W.3d at 150 (citing *Miranda*, 133 S.W.3d at 226).

"In determining whether a plaintiff has alleged a concrete injury sufficient to meet the standing requirement, courts look to the plaintiff's pleadings." *Beasley*, 598 S.W.3d at 241; *accord Heckman*, 369 S.W.3d at 150. "We construe the plaintiff's pleadings liberally, taking all factual assertions as true, and look to the plaintiff's intent." *Heckman*, 369 S.W.3d at 150 (citing *Miranda*, 133 S.W.3d at 226).

"[T]he mere fact that a plaintiff may ultimately not prevail on the merits of the lawsuit does not deprive the plaintiff of standing." *Beasley*, 598 S.W.3d at 241.

*2.      Meeting Standing Requirements*

The Roberto Group's live pleading asserted claims for trespass to try title, trespass to real property, constructive trust, attorney's fees, accounting, declaratory judgment, unjust enrichment, breach of contract, and in the alternative, promissory estoppel. *See Beasley*, 598 S.W.3d at 241 (concrete injury, justiciable controversy). For each claim, the Roberto Group alleged facts that identified their personal injury, traced it to the Ramirezes' conduct, and sought damages to compensate them for their alleged injury. *Cf. Heckman*, 369 S.W.3d at 155–56 (standing elements).

Construing their pleading liberally, taking its factual assertions as true, and without regard to the claims' merits, we conclude the Roberto Group met its burden to plead facts demonstrating standing. *See id.* at 150 (citing *Miranda*, 133 S.W.3d at 226); *see also Beasley*, 598 S.W.3d at 241 (distinguishing standing from a suit's merits). Accordingly, the trial court could not have properly granted the Ramirezes' plea based on the Roberto Group's alleged lack of standing.

## C. Mootness Ground

The Ramirezes' plea also asserted that the Roberto Group's cause was moot "because there has ceased to exist a justiciable controversy between the parties."

### 1. *Assessing Mootness*

"Mootness occurs when events make it impossible for the court to grant the relief requested or otherwise 'affect the parties' rights or interests.'" *State ex rel. Best v. Harper*, 562 S.W.3d 1, 6 (Tex. 2018) (quoting *Heckman*, 369 S.W.3d at 162). "When a case becomes moot, the court loses jurisdiction and cannot hear the case, because any decision would constitute an advisory opinion that is 'outside the jurisdiction conferred by Texas Constitution article II, section 1.'" *Id.* (quoting *Matthews, on behalf of M.M. v. Kountze Indep. Sch. Dist.*, 484 S.W.3d 416, 418 (Tex. 2016)).

### 2. *Avoiding Mootness*

In the hearing on the Ramirezes' plea to the jurisdiction, as the parties were addressing the Ninth Amended Petition's first five claims, the trial court stated "I granted the summary judgment with regard to the causes of action that were—that were going on back then . . . [s]o, you would have to argue your Plea to the Jurisdiction now with these four causes of action [i.e., declaratory judgment, unjust enrichment, breach of contract, and promissory estoppel]."

The record shows the trial court granted motions for summary judgment against other plaintiffs in two of the severed causes, i.e., 5937-A and 5937-B, but the record does not contain an

order or a docket entry showing the trial court granted a motion for summary judgment against the Roberto Group's claims in cause number 5937.

The Agreed Final Judgment is not a final, appealable judgment; it did not finally dispose of the Roberto Group's then-pending claims, and it did not negate as a matter of law the trial court's subject matter jurisdiction over the Roberto Group's four subsequent causes of action. Accordingly, the trial court could not have properly granted the Ramirezes' plea based on mootness.

**D.      "Finality of Judgments" Ground**

The Ramirezes' plea also asserted that the trial court lacked subject matter jurisdiction because the Agreed Final Judgment "unambiguously contains finality language."

The Agreed Final Judgment was not a final, appealable judgment that disposed of all claims and all parties, and the trial court could not have properly granted the Ramirezes' plea on that ground.

**E.      First Issue Summary**

The trial court could not have properly granted the plea to the jurisdiction based on standing, mootness, or "finality of judgments."

**RES JUDICATA**

In their second issue, the Roberto Group argues the trial court could not have granted the plea to the jurisdiction on res judicata because it is an affirmative defense which cannot properly be considered in a plea to the jurisdiction.

The Ramirezes' plea asserted res judicata, but on appeal, they do not argue that it was a proper basis to grant their plea.

## A.      Affirmative Defense

An assertion of res judicata is not a plea to the jurisdiction; it is an affirmative defense that seeks to avoid liability. *Tex. Highway Dep't v. Jarrell*, 418 S.W.2d 486, 488 (Tex. 1967); *see* TEX. R. CIV. P. 94.

"[I]mmunity from liability is an affirmative defense that cannot be raised by a plea to the jurisdiction." *State v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009) (citing *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999) (per curiam) ("Immunity from liability does not affect a court's jurisdiction to hear a case.")). "An 'affirmative defense' like res judicata 'should be raised through a motion for summary judgment or proven at trial.'" *Town Park Ctr., LLC v. City of Sealy*, 639 S.W.3d 170, 182 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (quoting *Reyes v. Thrifty Motors, Inc.*, No. 01-15-00699-CV, 2016 WL 3571101, at *2 (Tex. App.—Houston [1st Dist.] June 30, 2016, no pet.) (mem. op.)); *accord In re D.K.M.*, 242 S.W.3d 863, 865 (Tex. App.—Austin 2007, no pet.) ("[A]n affirmative defense . . . should be raised through a motion for summary judgment, not through a motion to dismiss or a plea to the jurisdiction.").

## B.      Invalid Ground

The Ramirezes' plea to the jurisdiction asserted res judicata as a ground to grant its plea. But res judicata "is an affirmative defense that cannot be raised by a plea to the jurisdiction," and the trial court could not have properly granted the Ramirezes' plea on that ground. *See Lueck*, 290 S.W.3d at 880; *Jones*, 8 S.W.3d at 638; *Jarrell*, 418 S.W.2d at 488.

### JUDICIAL ADMISSIONS, STIPULATIONS

In their third issue, the Roberto Group argues the trial court could not have granted the Villarreals' plea to the jurisdiction based on their former statements because they were merely quasi-admissions and did not satisfy the requirements for conclusive judicial admissions.

The Ramirezes counter that the Roberto Group's repeated statements that (1) they were not seeking any monetary recovery against the Ramirezes and (2) they always waived any recovery against the Ramirezes were agreed-to stipulations. These stipulations required the trial court to dismiss the case because there was no longer a justiciable controversy and therefore the cause was moot.

Before we address the parties' arguments, we relate some additional background.

## A. Additional Background

### 1. Statements in Cause 5937

On August 31, 2010, in cause number 5937, the trial court held a hearing on the plaintiffs' and defendants' motions. The Roberto Group's then-live pleadings included claims against the Ramirezes for trespass to try title, trespass to real property, conversion, constructive trust, enhanced value damages, attorney's fees, accounting, and violations of the natural resources code.

In the hearing, the Roberto Group explained that their suit was against Chesapeake; they were not seeking monetary damages from the Ramirezes, but because one of their claims was for trespass to try title, the Ramirezes were necessary parties: "[W]e seek nothing against the Ramirezes. . . . We seek not a penny from the Ramirezes, and I'll state it again, and it's a stipulation on this case. . . . I've stipulated we don't seek any, any recovery, but I have to have them in this lawsuit as a trespass-to-try-title."

### 2. Statements in Cause 8848

On November 9, 2015, in cause number 8848, the trial court held a hearing on the Roberto Group's motion to compel discovery.

In the hearing, the parties and the court agreed that the Roberto Group had not sued the Ramirezes in cause number 8848. The trial court observed that that was correct "[b]ecause the

money was supposed to come from Chesapeake." The Roberto Group responded "Right. We always waived [money damages] from the Ramirezes."

### 3.      *Plea to the Jurisdiction*

On April 2, 2022, in cause number 5937, the Ramirezes filed their plea to the jurisdiction. It argued the trial court could grant the plea because the Roberto Group members "have judicially admitted and stipulated that they do not seek monetary damages against the Defendants." The plea also argued that "[t]he Rule 11 Agreement made the basis of [the Roberto Group's] Ninth Amended Petition, and as judicially admitted by [the Roberto Group], was made with [Chesapeake] and not with [the Ramirezes]." It added that "Chesapeake filed for Chapter 11 bankruptcy and has been discharged of all liability in [cause 5937] and . . . [t]he Roberto Group did not sue the Ramirez[es] in the 8848 Case and therefore the Roberto Group is barred."

We address each argument in turn.

## B.      **Waiver of Liability Only**

The parties dispute whether the Roberto Group's statements were quasi-admissions or stipulations, but that is not the controlling question. Even if we assume the statements were stipulations, which we do not decide, the remaining question is what effect such stipulations would have.

The Roberto Group's statements waived recovery of monetary damages against the Ramirezes, but that is a waiver of liability. *Cf. City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011) (recognizing that "immunity from liability shields the state from money judgments even when the [state is not immune from suit]"). "[I]mmunity from liability constitutes an affirmative defense, not a jurisdictional bar," *id.*, and it "does not affect a court's jurisdiction to hear a case," *Jones*, 8 S.W.3d at 638.

**C.      Settlement Agreement with Chesapeake**

The Ramirezes' plea also argued that the Roberto Group judicially admitted that the settlement agreement was made with Chesapeake and not with the Ramirezes.

But the record for the hearing on the settlement agreement shows that the Ramirezes were to execute quit claim deeds "to the Villarreal plaintiffs and intervenors."

The Ramirezes do not further explain how the Roberto Group's statements acknowledging that their claims against Chesapeake were based on the settlement agreement negate the trial court's jurisdiction.  Without more, we conclude that they do not deprive the trial court of subject matter jurisdiction.

**D.      Cause Number 8848**

Finally, the Ramirezes' plea asserted that Chesapeake's liability was discharged in bankruptcy, and because the Roberto Group did not join the Ramirezes in cause number 8848, the Roberto Group's claims are barred.  The plea did not explain or provide authorities to show how Chesapeake's bankruptcy and the Roberto Group's decision not to join the Ramirezes in cause number 8848 negated the trial court's jurisdiction.

On appeal, the Ramirezes argue that "the record is replete with the [Roberto Group's] stipulations," including that "the [settlement] agreement was with Chesapeake," but they do not further explain or provide authorities to show how these statements negate the trial court's subject matter jurisdiction.  Without more, we conclude that they do not.

**E.      Judicial Admissions Ground**

The Roberto Group's statements that they were not seeking any monetary recovery against the Ramirezes were statements waiving liability, but "immunity from liability is an affirmative defense that cannot be raised by a plea to the jurisdiction," *see Lueck*, 290 S.W.3d at 880 (citing *Jones*, 8 S.W.3d at 638).

Further, the Roberto Group's statements waiving recovery, acknowledging that their then-live claims were against Chesapeake and not the Ramirezes, and acknowledging that they did not join the Ramirezes in cause number 8848 did not conclusively negate any jurisdictional facts that would deprive the trial court of subject matter jurisdiction. *See Miranda*, 133 S.W.3d at 227; *Poindexter*, 306 S.W.3d at 806.

Accordingly, the trial court could not have properly granted the Ramirezes' plea to the jurisdiction based on the Roberto Group's statements. *See Lueck*, 290 S.W.3d at 880; *Jones*, 8 S.W.3d at 638; *Jarrell*, 418 S.W.2d at 488.

## CONCLUSION

The Ramirezes' plea to the jurisdiction challenged the existence of jurisdictional facts, and it argued the trial court lacked subject matter jurisdiction based on standing, mootness, judicial admissions, res judicata, and finality of judgments. None of these were proper grounds on which to grant the plea, and the trial court erred by granting it.

We reverse the trial court's June 6, 2022 order granting the Ramirezes' plea to the jurisdiction, and we remand this cause.

Patricia O. Alvarez, Justice