

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

---

No. 08-25-00021-CV

---

Texas Department of Public Safety, Appellant

v.

Kenneth F. Sanders, Jr., Appellee

---

On Appeal from the 53rd District Court
Travis County, Texas
Trial Court No. D-1-GN-20-000990

---

## MEMORANDUM OPINION ON MOTION FOR REHEARING[1]

Appellee Kenneth Sanders has filed a motion for rehearing seeking reconsideration of our

opinion reversing and rendering judgment in favor of DPS. We deny the motion for rehearing, but

---

[1] This case was transferred pursuant to the Texas Supreme Court's docket equalization efforts. Tex. Gov't Code Ann. § 73.001. We follow the precedent of the Third Court of Appeals to the extent it might conflict with our own. *See* Tex. R. App. P. 41.3.

we withdraw our opinion of October 7, 2025, and issue this opinion and corresponding judgment in its place. Our disposition remains the same.

This is an accelerated interlocutory appeal from the denial of a plea to the jurisdiction filed by Appellant Texas Department of Public Safety. In its plea, DPS asserted sovereign immunity and sought dismissal of all claims brought by Appellee Kenneth Sanders following his resignation. DPS challenges the sufficiency of Sanders's pleadings on his disability-discrimination and retaliation claims to invoke waiver of sovereign immunity.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Sanders was formerly employed by DPS as a Texas State Trooper. In 2017, an attorney filed a complaint accusing Sanders of committing perjury during an administrative review hearing. The following year, the same attorney filed a second complaint against Sanders making similar allegations. After investigating, the DPS Office of Inspector General (OIG) determined that Sanders knowingly made misleading statements under oath in official proceedings. DPS then requested his resignation, which Sanders submitted on July 19, 2018.

Seven months later, Sanders filed a discrimination charge with the Texas Workforce Commission on February 26, 2019, and with the Equal Employment Opportunity Commission on February 28, 2019. About a year later, Sanders sued DPS for disability discrimination and retaliation under the Texas Commission on Human Rights Act (TCHRA) and the Americans with Disability Act (ADA). In August 2020, Sanders filed a first amended petition against DPS, asserting disability-discrimination and retaliation claims under the TCHRA, Texas Government Code, and Texas Constitution. DPS responded with a plea to the jurisdiction, arguing that Sanders failed to exhaust statutory and jurisdictional prerequisites to suit and failed to show a waiver of sovereign immunity under the Texas Government Code and Texas Constitution. On January 21,

2

2022, the trial court denied DPS's plea on Sanders's TCHRA discrimination and retaliation claims but granted it on his remaining claims under the Texas Government Code and Texas Constitution.

On July 15, 2022, Sanders filed a second amended petition, adding DPS Director Steven C. McCraw as a defendant. Sanders re-alleged the same disability-discrimination and retaliation claims against DPS under the TCHRA. Against McCraw, Sanders asserted claims under the Texas Government Code, Texas Constitution, Texas Penal Code, and Uniform Declaratory Judgment Act.

On August 28, 2024, DPS and McCraw filed their First Amended Plea to the Jurisdiction, arguing that Sanders failed to affirmatively demonstrate waiver of immunity under the TCHRA, Texas Government Code, or Texas Constitution, and that his claims against McCraw under the Texas Penal Code and Uniform Declaratory Judgment Act were barred as a matter of law. After a hearing, the trial court partially granted and partially denied the plea. It denied the plea as to Sanders's disability-discrimination and retaliation claims against DPS but granted it as to the remaining claims against McCraw under the Texas Constitution, Texas Government Code, Texas Penal Code, and Uniform Declaratory Judgment Act. This interlocutory appeal followed.[2] Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (allowing for an interlocutory appeal of a ruling on a plea to the jurisdiction by a governmental unit).

## II. APPLICABLE LAW AND STANDARD OF REVIEW

### A. Plea to the jurisdiction

A plea to the jurisdiction challenges a trial court's subject matter jurisdiction. *Tex. Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 232 (Tex. 2004). It is a dilatory plea that can defeat a cause of action without regard to the merits of the asserted claims. *Bland Indep. Sch. Dist. v.*

---

[2] McCraw is not a party to this appeal.

*Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Subject-mater jurisdiction cannot be conferred or taken away by consent or waiver, unless the Legislature has expressly waived immunity. *Carroll v. Caroll*, 304 S.W.3d 366, 367 (Tex. 2010).

A plea to the jurisdiction based on sovereign immunity properly challenges a trial court's subject matter jurisdiction. *Miranda*, 133 S.W.3d at 225–26. Through the enactment of the TCHRA, the Texas Legislature waived immunity for certain governmental units. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012). As a state agency, DPS is a governmental unit. Tex. Gov't Code Ann. § 411.002(a); Tex. Civ. Prac. & Rem. Code Ann. § 101.001(3)(a). In a suit against a governmental unit, like DPS, the prima facie case implicates both the merits of the claim and the court's jurisdiction because of the doctrine of sovereign immunity. *Mission Consol.*, 372 S.W.3d at 636. Sovereign immunity deprives a trial court of jurisdiction over suits in which the governmental unit has been sued, absent consent. *Id.* at 636.

The Texas Legislature, by its enactment of the TCHRA, "clearly and unambiguously waives immunity" for governmental units like DPS, but the waiver applies "only for those suits where the plaintiff actually alleges a violation of the TCHRA by pleading facts that state a claim thereunder." *Mission Consol.*, 372 S.W.3d at 636, 660. Absent pleadings establishing a prima facie case, the governmental unit's immunity from suit has not been waived.[3] *Id.* at 636.

---

[3] As a sub-argument, Sanders contends that the "applicable analysis of Appellants' plea should only focus on whether Sanders' petition provided Appellants with fair notice of Appellee's TCHRA disability discrimination claim." In the trial court and on appeal, Sanders contends that by filing his second amended petition, DPS had fair notice of the claims against it, which he asserts should control our analysis. Subject-matter jurisdiction, however, cannot be created or waived by consent. *Carroll v. Caroll*, 304 S.W.3d 366, 367 (Tex. 2010). And as the Texas Supreme Court has stated, "[a]ll elements of a TCHRA circumstantial-evidence claim are, perforce, jurisdictional." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 783 (Tex. 2018). DPS maintains that "Sanders' flagrant attempt to use the fair-notice standard to circumvent deficiencies in his petition does not absolve him of the requirement to plead facts that, when taken as true, state a plausible claim for relief." We agree. When a plaintiff, such as Sanders, fails to establish the required elements of a TCHRA claim at the prima-facie-case stage, the trial court lacks subject-matter jurisdiction and must dismiss the claims. *Tex. Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004). Moreover, if the pleading affirmatively negates the existence of jurisdiction, as it does here, the court may grant a plea to the jurisdiction without affording the plaintiff an opportunity to amend. *Id.*; *see Meyers v. JDC/Firethorne, Ltd.*, 548

"A jurisdictional plea may challenge the pleadings, the existence of jurisdictional facts, or both." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). When, as here, the plea only challenges the pleading itself, we determine whether the plaintiff has alleged facts that affirmatively establish the court's jurisdiction. *Miranda*, 133 S.W.3d at 226. We must accept the allegations in the pleadings as true and construe them liberally in the plaintiff's favor. *Id*. The plaintiff has the burden of establishing facts that affirmatively show the trial court has jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). If the pleadings fail to allege facts to affirmatively demonstrate the trial court's jurisdiction, but also do not affirmatively demonstrate incurable jurisdictional defects, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *Miranda*, 133 S.W.3d. at 226–27. However, if the pleadings affirmatively negate the existence of jurisdiction, the plea may be granted without affording the plaintiff an opportunity to amend.[4] *Id*. at 227; *State v. Lueck*, 290 S.W.3d 876, 886 (Tex. 2009). Moreover, dismissal with prejudice is appropriate when a plaintiff has been provided a reasonable opportunity to amend after a governmental entity had filed a plea to the jurisdiction, and the plaintiff's amended pleading still does not allege facts that would constitute a waiver of immunity. *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004). We review a trial court's jurisdictional ruling de novo. *Id*. at 226.

## III. ANALYSIS

DPS asserts in its plea to the jurisdiction, and on appeal, that Sanders failed to establish a prima facie case for his claims of disability discrimination and retaliation. We begin by reviewing

---

S.W.3d 477, 486 (Tex. 2018) (providing that a plaintiff is not entitled to amend if his petition affirmatively negates jurisdiction).

[4] In its plea to the jurisdiction, DPS only challenged the sufficiency of the pleadings, and neither party submitted evidence in support of or in opposition of the plea. Evidence is not necessary to resolve a plea to the jurisdiction when the plaintiff's petition affirmatively negates the court's jurisdiction. *Miranda*, 133 S.W.3d at 226–27.

Sanders's live petition to determine whether the facts pleaded affirmatively demonstrate that jurisdiction exists. *State v. Holland*, 221 S.W.3d 639, 642–43 (Tex. 2007).

## A. Disability discrimination

In Issue One, DPS contends the trial court erred in denying its plea on Sanders's disability discrimination claim because Sanders failed to allege facts showing that his claim falls within the TCHRA's limited waiver of sovereign immunity.[5]

---

[5] DPS also challenges, to the extent Sanders properly raised them, claims of failure to accommodate and hostile work environment. As to the failure to accommodate, Sanders alleged under his "First Cause of Action" (disability-discrimination) that he "suffered multiple adverse employment actions" by DPS, including "DPS . . . not attempt[ing] to provide [him] reasonable accommodations." Sanders framed this allegation as an example of an adverse employment action—not as a separate claim. As to the hostile work environment, Sanders alleged that he was subjected to "disciplinary actions for conduct that did not warrant such, subjecting him to a hostile work environment[.]" He included this statement within his first cause of action (disability-discrimination) to establish an adverse employment action and repeated it in his second cause of action (retaliation) for the same purpose. When determining whether a plaintiff has pleaded a particular cause of action, "we must be able to determine from the pleadings alone the elements of the cause of action." *Wilson v. Bloys*, 169 S.W.3d 364, 369 (Tex. App.—Austin 2005, pet. denied).

To state a failure-to-accommodate claim, "a plaintiff must show that (1) he has a disability; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodations he could perform the essential functions of his position; and (4) the employer refused to make such accommodations." *Donaldson v. Texas Dep't of Aging & Disability Servs.*, 495 S.W.3d 421, 439 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (cleaned up). Even if Sanders properly raised this claim, he did not allege any facts showing he could perform the essential functions of his job with a reasonable accommodation, what accommodation he requested, or that DPS refused to provide one. His only allegations are: "Sanders was qualified for the position for which he was employed, *as he could perform the essential duties of his job, with or without reasonable accommodation*," and "Defendant DPS also did not attempt to provide reasonable accommodation for Sanders." On appeal, Sanders argues he was denied a reasonable accommodation because he "sought to request allowance for his disability by trying to present evidence of how his medical condition had impaired his ability to recollect information about which he was questioned." DPS responds that this "attempts to pass off his alleged efforts to respond to the investigation with evidence of his disability as an accommodation request," and "[a]ny evidence Sanders sought to provide in defense of the claims asserted against him were efforts to explain or justify those actions afterwards in response to the investigation; it was not a request that, if granted, would have made it possible for him to testify truthfully despite his disability." We agree. Sanders therefore did not, and cannot, sufficiently plead a failure-to-accommodate claim.

To state a hostile work environment, a plaintiff must show: "(1) he belongs to a protected group; (2) he was subjected to unwelcomed harassment; (3) the complained-of harassment was based on his disability; (4) the harassment at issue affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassment and failed to take prompt remedial action." *Johnson v. Capstone Logistics, LLC*, No. 01-23-00221-CV, 2024 WL 5249164, at *9 (Tex. App.—Houston [1st Dist.] Dec. 31, 2024, no pet.) (mem. op). Sanders has not alleged facts showing that he was subjected to unwelcomed harassment, that any harassment was based on his disability, that it affected his employment, or that DPS knew or should have known about it and failed to act. He therefore did not, and cannot, sufficiently plead this claim.

We conclude that Sanders did not properly plead either a failure-to-accommodate claim or a hostile-work-environment claim against DPS; nor does his petition set forth the elements of either claim. Even if properly raised, both claims fail at the prima-facie-case stage. In any case, the trial court specified that the plea to the jurisdiction "is DENIED as to the discrimination and retaliation claims against Texas Department of Public Safety. (Counts 1–2)." Because the trial court did not dismiss the failure-to-accommodate claim or hostile-work-environment claims, we do not consider whether the trial court erred in refusing to dismiss them. Accordingly, we restate the issues as follows:

Under the TCHRA, "an employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer . . . discharges an individual or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment." Tex. Lab. Code. Ann. § 21.051(1). To establish a prima facie case of disability discrimination, a plaintiff must show: (1) he has a disability; (2) he was qualified for his job; and (3) he suffered an adverse employment decision because of his disability. *Tex. Dep't of Transp. v. Lara*, 625 S.W.3d 46, 52 (Tex. 2021). A plaintiff may rely on either direct or circumstantial evidence to establish a prima facie case of unlawful discrimination; however, "direct evidence of discriminatory intent is typically 'hard to come by[.]'" *Tex. Tech Univ. Health Scis. Ctr. El Paso v. Flores*, 612 S.W.3d 299, 305 (Tex. 2020) (quoting *Mission Consol.*, 372 S.W.3d at 634).

To establish his prima facie discrimination claim, courts follow the burden-shifting framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id*. Under the *McDonnel Douglas* framework, (1) the plaintiff must first create a presumption of illegal discrimination by establishing a prima facie case; (2) the defendant must then rebut that presumption by establishing a legitimate, non-discriminatory reason for the adverse employment action; and (3) the plaintiff must then overcome the rebuttal evidence by establishing the defendant's stated reason is a pretext. *Id*. We consider the trial court's jurisdiction by first inquiring whether Sanders met his burden of establishing a prima facie case. *San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 135–36 (Tex. 2015). Then, if he has, the burden shifts to the employer to articulate a legitimate non-discriminatory reason for its differential treatment of the employee. *McDonnel*, 411 U.S. at 802.

---

Issue One—whether Sanders sufficiently pleaded a prima facie disability-discrimination claim against DPS; and Issue Two—whether Sanders sufficiently pleaded a prima facie retaliation claim against DPS.

DPS disputes only the third element of Sanders's disability-discrimination claim—whether Sanders suffered an adverse employment action because of his disability. To establish an adverse employment action, "the plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *El Paso Cmty. Coll. v. Lawler*, 349 S.W.3d 81, 88 (Tex. App.—El Paso 2010, pet. denied). In his petition, Sanders alleged the following in support of this element:

> Sanders suffered multiple adverse employment actions by Defendant DPS, including but not limited to, being subjected to disciplinary actions for conduct that did not warrant such, a hostile work environment, and being wrongfully terminated from employment. Defendant DPS also did not attempt to provide reasonable accommodation for Sanders.

As to Sanders's first example of an adverse employment action—"being subjected to disciplinary actions for conduct that did not warrant such"—this allegation, without more, cannot rise to the level of an adverse employment action to support the third element of a disability-discrimination claim. *Mission Consol.*, 372 S.W.3d at 638 ("[S]ome inquiry is necessary because if TCHRA plaintiffs were allowed to stand on talismanic allegations alone, the constraining power of pleas to the jurisdiction would practically be eliminated."). Sanders has not shown that the disciplinary action, as pleaded, qualifies as an adverse employment action to invoke protection under the TCHRA, nor has he alleged what disciplinary actions, if any, were taken against him. Such vague allegations are insufficient to invoke jurisdiction. *Mission Consol.*, 372 S.W.3d at 637; *see Alamo Heights*, 544 S.W.3d at 770 ("The TCHRA waives immunity, but only when the plaintiff states a claim for conduct that actually violates the statute.").

Sanders also alleged "a hostile work environment" and failure "to provide reasonable accommodation" as examples of adverse employment actions. As already discussed, *supra* n.2, these are distinct claims, and Sanders has not shown how either a hostile work environment or

failure to accommodate qualifies as adverse employment actions. Even if these claims could constitute adverse employment actions for purposes of satisfying the third element of his disability-discrimination claim, Sanders has not alleged facts to indicate a hostile working environment or that he ever requested an accommodation for his disability to perform the essential functions of his job. "[T]he TCHRA addresses only 'ultimate employment decisions'; it does not address 'every decision made by employers that arguably might have some tangential effect upon employment decisions.'" *Anderson v. Houston Cmty. Coll. Sys.*, 458 S.W.3d 633, 644 (Tex. App.—Houston [1st Dist.] 2015, no pet.). Sanders therefore cannot rely on his bare assertions of a hostile work environment or failure to accommodate as adverse employment actions to show the third element of his disability-discrimination claim.

Sanders also alleged he was "wrongfully terminated" as his last example of an adverse employment action. Although termination and resignation are distinct, Sanders claims that because he was forced to resign, he was constructively discharged. If proven, constructive discharge would qualify as an adverse employment action. *See Passons v. University of Texas at Austin*, 969 S.W.2d 560, 562 (Tex. App.—Austin 1998, no pet.) ("Constructive discharge serves as a legal substitute for the discharge element of a prima facie case of discrimination."); *see also Texas Dep't of Crim. Just. v. Flores*, 555 S.W.3d 656, 667 (Tex. App.—El Paso 2018, no pet.) ("That doctrine permits an employee who resigns, rather than being terminated, to satisfy the discharge requirement of a discriminatory discharge claim.").

Turning to the third element of causation, we consider whether Sanders pleaded facts showing that the adverse employment action—his resignation—occurred because of his disability. DPS maintains Sanders failed to do so. Sanders argues that he sufficiently alleged facts to establish the causal link because he "had not knowingly made false and misleading statements but had not been able to recall or had been confused by the nature of an attorney's questions in the suppression

hearing." He also relies on the following allegations from his petition concerning conduct during the investigation and his disability-related memory limitations to show that he pleaded sufficient facts to establish causation:

> As a result of [the attorney's] complaints, Defendant DPS's Office of Inspector General ("OIG") initiated an investigation of Sanders' work and performance of his duties, including his testimony in previous proceedings. . . . Sanders was not provided with a true or proper opportunity to present evidence to rebut or challenge the veracity or accuracy of the charges made against him, including reasons to explain his inability to recall details from a proceeding that occurred ten (10) years prior to the testimony that was under investigation. Sanders' inability to recall details from 2006 were due at least in part to Sanders' progressive memory loss that he has been experiencing since 2008 because of his disability.

According to Sanders, this allegation shows that his "memory limitations caused by his disabilities resulted in the wrongful basis for his investigation and ultimately, his termination." However, this argument is flawed.

Sanders has not alleged facts showing that DPS called for his resignation because of his disability. Rather, his own allegations, as pleaded, show that the attorney's complaints triggered the OIG investigation, which found he had committed perjury, and that report led DPS to call for his resignation.[6] "For a plaintiff who proceeds along the *McDonnell Douglas* burden-shifting framework, the prima facie case is the necessary first step to bringing a discrimination claim under the TCHRA. Failure to demonstrate those elements means the plaintiff never gets the presumption of discrimination and never proves his claim." *Mission Consol.*, 372 S.W.3d at 637. And again, "[t]he TCHRA waives immunity, but only when the plaintiff states a claim for conduct that actually violates the statute." *Alamo Heights*, 544 S.W.3d at 770. Accordingly, Sanders's pleadings affirmatively demonstrate that he did not show that his resignation occurred because of his

---

[6] Sanders pleaded: "As a result of [the attorney's] complaints, Defendant DPS's Office of Inspector General ('OIG') initiated an investigation of Sanders' work and performance of his duties, including his testimony in previous proceedings."; "on or about July 6, 2018, Defendants notified Sanders that they intended to terminate his employment based on the OIG's report that allegedly found that he had knowingly made misleading statements or provided false information in the course of official business under oath at a suppression hearing in 2016."

disability and this defect cannot be cured. *See Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007) ("[A] pleader must be given an opportunity to amend in response to a plea to the jurisdiction only if it is possible to cure the pleading defect.").

We hold that Sanders did not sufficiently plead a prima facie disability-discrimination claim. Because he failed to establish a prima facie disability-discrimination case, it follows he has also failed to invoke the TCHRA's limited waiver of sovereign immunity. The trial court erred in denying DPS's plea to the jurisdiction on this claim. Issue One is sustained.

### B. Retaliation

In Issue Two, DPS challenges the trial court's denial of its plea on Sanders's retaliation claim, arguing that Sanders failed to sufficiently plead a prima facie case of retaliation to invoke the TCHRA's limited waiver of sovereign immunity.

The TCHRA prohibits an employer from retaliating or discriminating against a person who has engaged in protected activity such as opposing a discriminatory practice or making a charge of discrimination. Tex. Lab. Code. Ann. § 21.055. To establish a prima facie case of retaliation under the TCHRA, an employee must show: (1) he engaged in protected activity; (2) he experienced a materially adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *Alamo Heights*, 544 S.W.3d at 782. DPS challenges all three elements on appeal. The TCHRA also prohibits retaliation against an employee for engaging in protected activities, "like filing a charge of employment discrimination." *El Paso Cnty. Water Improvement Dist. No. 1 v. Trevizo*, 697 S.W.3d 259, 277 (Tex. App.—El Paso 2023, no pet.). However, not all retaliatory employment action is protected; to be protected, the employment action must be "materially adverse, meaning an action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*. (cleaned up). "A retaliation claim may be actionable even if the underlying discrimination claim is not." *Id*.

In his petition, Sanders vaguely alleged he was subjected to retaliation because he "opposed discrimination as prohibited by Chapter 21 of the Texas Labor Code and engaged in other activity protected by statute, including accessing the protection provided by Chapter 21 of the Texas Labor Code." DPS contends that "[t]his vague, conclusory assertion is insufficient to survive a jurisdictional challenge" and we agree.

Aside from this assertion, the only other protected activity Sanders alleges is filing an EEOC charge. In his response opposing the plea, and on appeal, Sanders maintains he "filed an EEOC claim detailing the discrimination and hardships he faced by the acts of Appellants due to his disability" and "[t]aking such action is a protected act, for the purposes of a retaliation claim." We do not dispute that filing an EEOC charge constitutes a protected activity; it does. *Alamo Heights*, 544 S.W.3d at 786 ("An employee engages in a protected activity by . . . making a charge of discrimination with the EEOC."). An EEOC charge can establish participation in protected activity and may satisfy the causal-link element if the employer knew of the charge and retaliated accordingly. *See id*. at 790. DPS acknowledges this point but argues that "it is impossible for DPS to have retaliated against Sanders for this because [he] did not file the charge until February 20, 2019, several months *after* he resigned on July 20, 2018." We agree and find this timing is fatal to Sanders's claim at the prima-facie-case stage.[7]

---

[7] Also fatal to Sanders's claim is his failure to provide dates for most of the conduct alleged in both his petition and EEOC charge. **"**To bring a suit for unlawful employment practices, a plaintiff must first have filed an administrative complaint with the EEOC or the TCHR 'not later than the 180th day after the date the alleged unlawful employment practice occurred.'" *Univ. of Tex. v. Poindexter*, 306 S.W.3d 798, 807 (Tex. App.—Austin 2009, no pet.) (citing Tex. Lab. Code Ann. § 21.202(a)). "The timely filing of an administrative complaint is a mandatory and jurisdictional prerequisite to filing suit." *Olivarez v. Univ. of Texas at Austin*, No. 03-05-00781-CV, 2009 WL 1423929, at *2 (Tex. App.—Austin May 21, 2009) (citing *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996)). The same is true for Sanders's disability-discrimination claim. *See Poindexter*, 306 S.W.3d at 808 (finding that plaintiff's "failure to [provide dates] deprives the trial court of jurisdiction over any events for which she did not specify dates").

Temporal proximity between the protected activity and the adverse action is relevant to the causation element of a retaliation claim. *Alamo Heights*, 544 S.W.3d at 790. "The causation standard for the *McDonnell Douglas* prima-facie-case element is not onerous and can be satisfied merely by proving close timing between the protected activity and the adverse action." *Id*. at 782 (citation omitted). The causal-link requirement may also be established by circumstantial evidence showing that the "employer's decision was based in part on knowledge of the employee's protected activity or the protected activity and adverse employment action were 'not wholly unrelated.'" *Esparza v. Univ. of Texas At El Paso*, 677 S.W.3d 115, 125 (Tex. App.—El Paso 2023, no pet.). "Temporal proximity may be evidence of a causal connection only when a person with input into the employment decision was aware of the protected activity." *Crutcher v. Dallas Indep. Sch. Dist.*, 410 S.W.3d 487, 497 (Tex. App.—Dallas 2013, no pet.). Temporal proximity between a protected activity and the adverse employment action may also suffice as evidence of a causal connection "when they are separated by weeks, as opposed to months or years." *Id*.

The timing of Sanders's EEOC charge prevents him from alleging a causal nexus between the protected activity and the adverse action. Sanders filed his EEOC charge—the protected activity—*after* his resignation—the claimed adverse action. He therefore has not, and cannot, allege a causal link between the two, and this incurable defect affirmatively negates jurisdiction. *See Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 623 (Tex. 2011) ("When this Court upholds a plea to the jurisdiction on sovereign immunity grounds, we allow the plaintiff the opportunity to replead if the defect can be cured."). Nor has he alleged facts showing that DPS called for his resignation because he filed an EEOC charge.

Sanders also does not claim he intended to file an EEOC charge before his resignation. Even if he had, he does not allege DPS decisionmakers knew of that intention before calling for his resignation. On these allegations, it is implausible for Sanders to assert that the EEOC charge

was causally connected to DPS's decision because the decision to seek his resignation predated the charge. *See Alamo Heights*, 544 S.W.3d at 790 (holding that because the decisionmakers "made the decision to implement the growth plan before they knew of [plaintiff's] charge . . . [plaintiff's] retaliation claim based on implementation of the growth plan fails at the prima-facie-case stage"); *see also Esparza*, 677 S.W.3d at 127 ("[Plaintiff] also cannot establish a causal nexus between her second EEOC complaint and termination because [the employer] issued [plaintiff] an intent to terminate letter on September 10, 2013, eight days *before* she filed that complaint . . . The second EEOC complaint further fails the causation inquiry because there is no evidence of [the employer's] knowledge of the second EEOC complaint.") (emphasis added) (cleaned up). "Carrying out a previously planned employment decision is no evidence of causation." *Alamo Heights*, 544 S.W.3d at 790.

We therefore hold Sanders failed to plead facts showing a causal connection between the protected activity and the adverse employment action sufficient to establish a prima facie case of retaliation.[8] Because he failed to establish a prima facie retaliation case, it follows he has also failed to invoke the TCHRA's limited waiver of sovereign immunity. Accordingly, the trial court erred in denying DPS's plea to the jurisdiction on this claim. Issue Two is sustained.

---

[8] Sanders requests in his motion for rehearing that we consider his allegation that DPS "continued to revise [his] personnel records unlawfully" as an adverse employment action for his retaliation claim. In his second amended petition, Sanders alleged DPS retaliated against him by "negatively altering his personnel records to his detriment." He asserts these acts occurred after he resigned and after he filed an EEOC charge, when DPS reported his separation as an honorable discharge and "continued to revise [his] personnel records unlawfully causing further harm to his reputation and his economic opportunities." Even liberally construing this post-separation conduct as an adverse employment action, Sanders pleaded that DPS corrected his status, and he dismissed the appeal of his separation status. He did not allege any facts, and the record does not show, a causal link between the filing of the EEOC charge and the alleged post-separation conduct, affirmatively negating jurisdiction. *See Cantu v. Hidalgo Cnty.*, 398 S.W.3d 824, 829 (Tex. App.—Corpus Christi-Edinburg 2012, pet. denied) (evaluating post-separation conduct in TCHRA retaliation claim and finding that "the evidence did not show that Cantu suffered a 'tangible adverse effect' on the terms and conditions of his current or prospective employment.").

### C. Opportunity to amend

We have concluded that DPS is immune from Sanders's disability-discrimination and retaliation claims. Sanders nevertheless asks us to remand the case to the trial court so that he may amend his pleadings to attempt to cure the jurisdictional defects.

A plaintiff generally may be afforded a "reasonable opportunity to amend" unless the pleadings affirmatively negate the existence of jurisdiction. *Sykes*, 136 S.W.3d at 639. Dismissal with prejudice is appropriate, however, when a plaintiff has already been provided a reasonable opportunity to replead after a governmental entity files a plea to the jurisdiction and still fails to allege sufficient facts to invoke waiver. *Id*. As the Texas Supreme Court has explained, "If a plaintiff has been provided a reasonable opportunity to amend after a governmental entity files its plea to the jurisdiction, and the plaintiff's amended pleading still does not allege facts that would constitute a waiver of immunity, then the trial court should dismiss the plaintiff's action." *Id*. "Such a dismissal is with prejudice because a plaintiff should not be permitted to relitigate jurisdiction once that issue has been finally determined." *Id*.

The record shows Sanders asserted disability-discrimination and retaliation claims under the TCHRA against DPS in his original petition. He then amended his petition, re-alleging the same disability-discrimination and retaliation claims against DPS under the TCHRA. DPS responded by filing a plea to the jurisdiction. After the trial court denied DPS's plea as to Sanders's TCHRA discrimination and retaliation claims, Sanders filed a second amended petition that again re-alleged the same disability-discrimination and retaliation claims against DPS under the TCHRA. Accordingly, Sanders has already been afforded a fair opportunity to amend his pleadings, and we decline his request for another opportunity to replead. *See Sykes*, 136 S.W.3d at 639; *Baskin v. Presidio Cnty.*, No. 08-24-00325-CV, 2025 WL 3237086, at *7 (Tex. App.—El Paso Nov. 19, 2025, no pet.) (mem. op.) (holding that because appellant had already been given a

15

fair opportunity to amend, "the trial court did not err in granting the plea to the jurisdiction without giving [appellant] another opportunity to replead."); *River City Partners, Ltd. v. City of Austin*, No. 03-19-00253-CV, 2020 WL 3164404, at \*8 (Tex. App.—Austin June 4, 2020, no pet.) (mem. op.) (declining appellant's request for a remand where it "amended its pleadings twice after the City filed its plea to the jurisdiction, and we have concluded that pleading failed to establish the district court's jurisdiction. [Appellant] is not entitled to relitigate jurisdiction.").

## IV. CONCLUSION

For these reasons, we reverse the trial court's denial of the plea to the jurisdiction and render judgment dismissing the disability-discrimination and retaliation claims against DPS with prejudice.

MARIA SALAS MENDOZA, Chief Justice

April 16, 2026

Before Salas Mendoza, C.J., Palafox and Soto, JJ.